IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00087-CMA-KMT

UNITED STATES OF AMERICA, for the use and benefit of HUDSPETH & ASSOCIATES, INC., a Colorado corporation,

    Plaintiffs,

vs.

CENTERRE CONSTRUCTION, a Colorado Corporation
MATSUO ENGINEERING, LLC, a Colorado Limited Liability Company
MATSUO ENGINEERING CENTERRE CONSTRUCTION, a Joint Venture
MATSUO-CENTERRE A JOINT VENTURE, LLC, a Colorado Limited Liability Company
BERKLEY REGIONAL INSURANCE COMPANY, a Delaware corporation,
MATSUO ENGINEERING CENTERRE CONSTRUCTION A JOINT VENTURE, LLC, a Colorado Limited Liability Company

    Defendants And Third-Party Plaintiffs,

Vs.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Company

    Third-Party Defendant.

_____

**PLAINTIFF'S MOTION IN LIMINE**
_____

Hudspeth & Associates ("Hudspeth") and Fidelity and Deposit Company of Maryland ("Fidelity"), by and through counsel, hereby submit their Motion in Limine, and in support thereof, state as follows:

    **Certification of Compliance with D.C.Colo.L.R. 7.1A:** Prior to the filing of this motion, the undersigned counsel discussed the legal basis with Defendants. Defendants oppose this motion.

1

## I.   INTRODUCTION.

This action pertains to construction work performed on a federal project for the modernization of the New Custom House (hereinafter "Project") in downtown Denver, Colorado, under a U.S. General Services Administration Prime Contract. On or about August 24, 2011, Hudspeth was awarded a subcontract (hereinafter "Subcontract") for asbestos abatement, demolition, and other work on the Project.

Hudspeth's primary work on the Project that is the subject of this construction payment dispute was abatement of asbestos containing materials. Hudspeth's earliest work in abating the asbestos containing materials largely began on the 4th floor of the Project where significant quantities of additional asbestos was discovered, an issue that became endemic throughout the remainder of the Project.

Hudspeth alleges four separate claims for relief including a breach of contract claim against Centerre Construction and the Matsuo – Centerre Joint Venture (collectively referred to hereinafter as "MC"). MC defends this action, in part, by arguing that it overpaid amounts to Hudspeth involving payments on executed and agreed upon amendments to the Subcontract, including, by way of example, the earliest of Hudspeth's asbestos abatement work on the Project involving the 4th floor of the New Customs House.

This motion addresses certain arguments and evidence MC seeks to introduce on its theory that MC has unilaterally rescinded certain mutually agreed upon amendments to the Subcontract that have been performed by Hudspeth and paid by MC. Hudspeth's position is that MC has not sufficiently plead any right, let alone proven elements necessary for rescission of any Subcontract amendments. Even if MC

demonstrates a right to rescission of Subcontract amendments, the Parties would revert to the Subcontract and not, as MC seeks to introduce as evidence, its "Adjusted Unit Prices" as replacement terms.

Before trial, courts have authority to grant an order excluding irrelevant exhibits and testimony based on secondhand information that are overly prejudicial and waste the Court's time. *See Aerotech Res., Inc. v. Dodson Aviation, Inc.*, 91 Fed. App'x 37, 46 (10th Cir. 2004) (affirming district court's pre-trial denial of testimony under Rules 401 and 403). Advance ruling on unduly prejudicial evidence serves the purpose of avoiding the obviously futile attempt to "unring the bell" once the evidence is offered and then stricken at trial. *McEwen v. City of Norman, Okla.*, 926 F. 2d 1539, 1548 (10th Cir. 1991).

II. **MC Should Not Be Permitted to Introduce Evidence of "Adjusted Unit Prices" for Asbestos Removal as MC's Rescission Theory, Even if Successful, Would Merely Return the Parties to the "Status Quo" -- the Subcontract Itself.**

As part of its computation of damages in this case, MC has produced a table setting forth its theory that certain Subcontract amendments are subject to an unspecified and unsubstantiated claim of rescission. As it is understood by Hudspeth, MC's position is that it has the ability to unilaterally rescind thirteen Subcontract amendments, and takes the position on rescission of the amendments as if it has already happened. Exhibit 1 hereto (highlighted); s*ee also* ¶111 Answer and Counterclaims ("Centerre rescinded Hudspeth's Subcontract Amendment…").

These Subcontract amendments—which the Parties executed, Hudspeth performed, and MC paid—contain agreed upon prices and terms different from that in

3

the Subcontract. *See, e.g.*, Exhibit 2, Subcontract Amendment 15 (providing for $38.00 per linear foot for pipe insulation removed from the 4th Floor [highlighted]) and *compare* Exhibit 3 (Subcontract providing for $47.00 per linear foot for pipe insulation and with additional unit rates for construction of containments [excerpt, highlighted]).

Based on its conclusory positon that the Subcontract amendments are already rescinded, MC now seeks to introduce its "Adjusted Unit Prices" for pipe insulation and other types of asbestos to unilaterally re-write the Subcontract. *See* Exhibit 4 (providing MC's "Adjusted Unit Prices" for pipe insulation at $28.59 per liner foot [highlighting original] including, for example on the 4th Floor [4th Floor also subject to Amendment 15, Exh. 2]).

MC cannot unilaterally rescind the Subcontract amendments nor unilaterally re-write them. To rescind a contract, the parties must by mutual assent agree to the rescission. One, in the absence of fraud or a special reason, cannot rescind. *Western Airlines, Inc. v. Hollenbeck*, 235 P.2d 792, 797 (Colo. 1951). MC has never plead fraud in the inducement, or any other adequate basis for alleging rescission in this case, and for this reason alone the evidence proffered by Defendants as to the "Adjusted Unit Prices" must be excluded. In other words, rescission of the Subcontract amendments is something MC would have to prove in order for the new prices to be arguably relevant.

Hudspeth denies there was any misrepresentation leading to the Subcontract amendments and will defend those allegations on the merits at trial. However, to show fraudulent inducement, MC must prove the following elements:

> (1) A false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or a concealment of a material existing fact, that in equity and good conscience should be disclosed; (2) knowledge on the part of the one making the

4

>representation that it is false; or utter indifference to its truth or falsity; or knowledge that he is concealing a material fact that in equity and good conscience he should disclose; (3) ignorance on the part of the one to whom representations are made or from whom such fact is concealed, of the falsity of the representation or of the existence of the fact concealed; (4) the representation or concealment is made or practiced with the intention that it shall be acted upon; and (5) action on the representation or concealment resulting in damage.
>
>*Trimble v. City & County of Denver*, 697 P.2d 716, 724 (Colo.1985).

Unless and until MC can demonstrate at least a *prima facie* case of fraudulent inducement as a basis of its claim to rescind certain Subcontract amendments, evidence of any "Adjusted Unit Prices" to supplant the amendments is irrelevant and prejudicial. As such, it must excluded under Fed. R. Evid. 401, 402, and 403.

MC's position also fails to recognize the legal import of rescission as to the resulting posture of the parties. The outcome of any effort to rescind the Subcontract amendments is not an opportunity for one party to re-write a certain term to its benefit. Under Colorado law, the operative outcome of any "rescission" would be to return the parties to the *status quo*. *Crawford Rehabilitation Servs. v. Weissman*, 938 P.2d 540, 547 (Colo. 1997) (citing Restatement (Second) of Contracts §164). The *status quo* where a party rescinds a contract amendment would be the underlying original contract. Here, the parties have agreed to and executed the Subcontract, which provides for unit rates for removal of asbestos and related activities. As such, the result of any successful claim as to rescission are the unit rates set forth in the original Subcontract. Exh. 3. Introduction of evidence of "Adjusted Unit Prices" that conflict with and have no legal basis as to the parties claims is the definition of irrelevant.

MC's introduction of the "Adjusted Unit Prices" is also highly prejudicial. This evidence is designed to be a significantly lower number than the amounts Hudspeth

would be entitled to under either the Subcontract or the Subcontract amendments in question. There is no basis in law that one party can re-write a contract amendment after *both* parties have performed. MC's position that it is able to re-write terms on a conclusory position that is has rescinded Subcontract amendments conflicts with Colorado law that the parties would return to the status quo—the Subcontract itself. For all of these reasons, the evidence of the Adjusted Unit Prices must be excluded under Fed. R. Evid. 401, 402, and 403.

### III.     CONCLUSION

MC improperly seeks to introduce evidence that would be highly prejudicial and has little relevance. Thus, the Court should bar this evidence.  **WHEREFORE**, Plaintiff requests an Order of the Court GRANTING the foregoing Motion.

DATED this 24th day of February, 2015.

Respectfully Submitted,

_____
Reed F. Morris
Craig T. Watrous
Mallon Lonnquist Morris & Watrous, PLLC
3200 Cherry Creek South Drive
Denver, Colorado  80209
Tel: 303-927-0011

### CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2015, a true and correct copy of the foregoing **PLAINTIFF'S MOTION IN LIMINE** was filed with the Clerk of the U.S. District Court for the District of Colorado using the CM/ECF system, and served upon the following Parties' email addresses:

| | |
|---|---|
| Edward T. DeLisle, Esquire<br>E-mail: edelisle@cohenseglias.com | J. Douglas Scherling, Esq.<br>E-mail: JDScherling@gmail.com |

Attorneys for Defendants:
Centerre Construction, Inc.
Matsuo Engineering, LLC
Matsuo Engineering Centerre Construction A Joint Venture
Matsuo-Centerre A Joint Venture, LLC,
Berkley Regional Insurance Company
Matsuo Engineering Centerre Construction A Joint Venture, LLC

_____
s/Reed F. Morris