IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00087 CMA-KMT

UNITED STATES OF AMERICA, for the use and benefit of HUDSPETH &
ASSOCIATES, INC., a Colorado corporation,

    Plaintiff,

v.

CENTERRE CONSTRUCTION, a Colorado Corporation;
MATSUO ENGINEERING, LLC, a Colorado Limited Liability Company;
MATSUO ENGINEERING CENTERRE CONSTRUCTION, a Joint Venture;
MATSUO-CENTERRE A JOINT VENTURE, LLC, a Colorado Limited Liability
Company; and
BERKLEY REGIONAL INSURANCE COMPANY, a Delaware corporation,

    Defendants and Third Party Plaintiffs.

vs.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Company

    Third-Party Defendant.

## DEFENDANTS/THIRD-PARTY PLAINTIFFS'
## MOTION TO EXCLUDE EXPERT TESTIMONY

Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 26 and 37(c),

and Federal Rules of Evidence ("Fed. R. Evid.") 403 and 702, Defendants/Third-Party

Plaintiffs Centerre Construction, Matsuo Engineering, LLC, Matsuo Engineering

Centerre Construction, a Joint Venture, Matsuo-Centerre a Joint Venture, LLC and

Berkley Regional Insurance Company (collectively, "the Defendants") hereby move this

Court for an order precluding Plaintiff Hudspeth & Associates, Inc. and Third-Party

Defendant Fidelity and Deposit Company of Maryland (collectively, for purposes of this

motion, "Hudspeth") from (1) calling Mr. Matsuo as an expert witness; (2) having Mr. Moss testify about "Moss Opinion C";[1] (3) having Mr. Condon testify about "Condon Opinion D" or any of the opinions disclosed in Hudspeth's rebuttal expert disclosure; (4) calling Ms. Samuels as an expert witness; (5) calling Mr. Troyer as an expert witness; and (6) having any of Hudspeth's non-retained expert witnesses testify about opinions formed specifically for trial.

I.    **Facts**

1.    Pursuant to this Court's October 8, 2014 Minute Order ("Revised Scheduling Order" D.I. #48), on January 16, 2015, Defendants disclosed two experts: (1) Curtis Johnson of Alfred Bensch & Co., who will testify about asbestos remediation, containment, and related unit costs in connection with the subject construction project at issue (the "Project") (Exhibit 1); and (2) Susan C. McGourty, P.E., Enhancement Engineering, who will testify about the impact to the Project Schedule due to Hudspeth's failure to complete its work in a timely manner and its abandonment of the Project (Exhibit 2).  Both of Defendants' experts were independently retained.  Expert reports were issued pursuant to Fed. R. Civ. P. 26(a)(2)(B).

2.    On January 16, 2015, Hudspeth served its expert disclosures, in which it named three expert witnesses: (1) Allan Matsuo of Matsuo Engineering (one of the Defendants/Counterclaimants); (2) Dan Moss, an assistant project manager at Hudspeth; and (3) Chris Condon a project manager at Hudspeth.  (Exhibit 3).

---

[1] "Moss Opinion C" and "Condon Opinion D" refers to the opinion disclosed under heading C and D for Mr. Moss and Mr. Condon respectively in Hudspeth's expert disclosures.

3.      Hudspeth designated Mr. Matsuo as an expert in "General Construction Contracting." (Ex. 3 at 1). Hudspeth purported to disclose a summary of the facts and opinions on which it expects Mr. Matsuo to testify. (Id. at 2-4). For Mr. Matsuo's opinions, Hudspeth cited a number of statements made by Mr Matsuo during his deposition as a fact witness in this litigation.[2] (Id.)

4.      Hudspeth disclosed Mr. Moss as an expert in "Asbestos Abatement," "Select Demolition," "Asbestos Abatement" and "Select Demolition Project Management." (Id. at 4). Presumably because Mr. Moss is an employee of Hudspeth & Associates Inc., Hudspeth did not produce a report, statement of qualifications or other information set forth in Fed. R. Civ. P. 26(a)(2)(B).

5.      Instead, Hudspeth purported to disclose a summary of the facts and opinions on which it expects Mr. Moss to testify. (Id. at 4-5). Specifically, Hudspeth disclosed that Mr. Moss would opine on the methods of asbestos abatement and demolition, the propriety of such methods, and that Hudspeth is seeking reasonable value for the work performed. (Id.)

6.      Hudspeth disclosed Mr. Condon as an expert in "General Construction Contracting," "Asbestos Abatement Contracting," "Asbestos Abatement," "Demolition Contracting," "Demolition," "Project Management," and "Estimating." (Id. at 5-6). Presumably because Mr. Condon is an employee of Hudspeth & Associates Inc.,

_____

[2] Defendants do not concede that Mr. Matsuo, in fact, made the statements, as paraphrased by Hudspeth in its expert disclosures. Defendants therefore reserve the right to offer the actual testimony from Mr. Matsuo's deposition or additional testimony at trial should the cited testimony be introduced in some manner by Hudspeth.

Hudspeth did not produce a report, statement of qualifications or other information set forth in Fed. R. Civ. P. 26(a)(2)(B).

7.      Instead, Hudspeth purported to disclose a summary of the facts and opinions on which it expects Mr. Condon to testify.  (Id. at 6-7).  Specifically, Hudspeth disclosed that Mr. Condon would opine on the methods of asbestos abatement and demolition; the propriety of such methods; the customs, practice and usage in the asbestos abatement industry of third-party industrial hygienist survey reports; and that Hudspeth is seeking reasonable value for the work performed.  (Id.)

8.      On February 13, 2015, Hudspeth served rebuttal expert witness disclosures. (Exhibit 4).  In its rebuttal disclosures, Hudspeth listed another 14 "opinions" for Mr. Condon.  (Id. at 2-5).

9.      These new expert opinions largely consist of unsurprising conclusions, e.g. that additional asbestos outside existing containments would require additional containment costs or factual statements and "that additional revised schedules were issued on this project by [Defendants/Counterclaimants] and provided to Hudspeth."  (Id. at 3).

10.     In addition to Mr. Condon, Hudspeth's rebuttal expert disclosures named two additional witnesses:  (1) Kylee Samuels of Scheduling Consultants, Ltd. and (2) Kevin M. Troyer of Terracon Consulting.  (Id. at 5-6).

11.     For both Ms. Samuels and Mr. Troyer, Hudspeth did not offer a report, statement of qualifications or other information set forth in Fed. R. Civ. P. 26(a)(2)(B). Nor did it provide a summary of the facts and opinions upon which it expects them to testify pursuant to Fed. R. Civ. P. 26(a)(2)(C).   Instead, Hudspeth merely made an initial

disclosure regarding information they "may have."  <u>See</u> Fed. R. Civ. P. 26(a)(1)(A)(i).  In additional to a rebuttal expert disclosure, the disclosure of Ms. Samuels and Mr. Troyer purports to be a Fed. R. Civ. P. 26(a)(1)(A)(i) disclosure.

12.     During the Project, Defendants/Counterclaimants retained Ms. Samuels, and her company, Scheduling Consultants, Ltd. to provide scheduling services on the Project.

13.     Hudspeth lists "Construction Planning and Scheduling," "Scheduling Specifications," and "Data Compilation and Schedule Reporting" as Ms. Samuels' areas of expertise and describes the information she "may have." (Ex. 4 at 5-6).

14.     During the Project, Defendants/Counterclaimants retained Mr. Troyer, and his former employer Walsh Environmental, to perform asbestos surveys, abatement design, and air monitoring services on the Project.

15.     Hudspeth lists "Asbestos Abatement," "Asbestos Design," "Asbestos Survey," "Asbestos Techniques," and "Oversight" as Mr. Troyer's subjects of testimony and describes the information he "may have." (<u>Id.</u> at 6-7).

## II.    Legal Argument

### A.    Legal Standard

The Federal Rules of Civil Procedure require a party to disclose its expert testimony prior to trial.  Fed. R. Civ. P. 26(a)(2)(A).  For an expert that is not retained, or for an expert whose duties as a party employee do not regularly involve expert testimony, a party need not produce an expert report.  Fed. R. Civ. P. 26(a)(2)(B).  Even when a party does not need to produce an expert report for its expert witness, a party must still disclose "(i) the subject matter on which the witness is expected to present

evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

A non-retained witness may testify about reports and opinions created contemporaneously with the facts underlying the matter, e.g. a treating physician's medical reports and notes drafted for the treatment of a patient. Scholl v. Pateder, No. 09-CV-02959-PAB-KLM, 2011 WL 2473284, at *4-5 (D. Colo. June 22, 2011). But, when a non-retained witness opines about matters only considered or observed in preparation for trial, the Court treats the witness as a retained expert. Id. (precluding one treating physician from testifying about another doctor's opinion and a second from testifying about a CT scan that she did not observe during the course of treatment, where the party designating the experts had already exhausted the court's limit on the number of retained experts). "The rules governing the limits of treating physician's expert testimony apply equally to govern the limits of expert testimony offered by other professionals." Id. at *6 n.3 (precluding accountant from testifying about projection of future business growth where projection was prepared for litigation).

Fed. R. Civ. P. 37(c)(1) provides, in relevant part, that, if a party fails to provide a required disclosure, that party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1). Rule 37 further provides that a court may impose sanctions upon a party who has failed to fulfill its discovery obligations. Fed. R. Civ. P. 37(c)(1)(C); Fed. R. Civ. P. 37(b)(2)(A)(i)—(vi). These sanctions include, *inter alia*, prohibiting the party from

supporting or opposing certain claims or from introducing the undisclosed matters into evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii). Accordingly, the exclusion of an undisclosed expert witness "is mandatory unless the non-disclosing party shows substantial justification or that the failure to disclose was harmless." Cook v. Rockwell Int'l Co., 233 F.R.D. 598, 600 & n.3 (D. Colo. 2005) (excluding rebuttal expert witness who was not disclosed until the eve of trial even though the opposing party was able to take an expert deposition) (citing Fed. R. Civ. P. 37(c)(1) (Adv. Comm. Note 1993); Jacobsen v. Deseret Book Co., 287 F.3d 936, 953-53 (10th Cir. 2002)).[3]

Even if expert testimony is properly disclosed, the District Court is the gatekeeper to admit or exclude expert testimony. Bitler v. A.O.Smith Corp., 400 F.3d 1227, 1232 (10th Cir. 2004). Federal Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; Perez v. Henneberry, 2011 WL 1743723 at * (D. Colo. May 5, 2011). The primary question under Rule 702 is whether "the testimony [will] aid[] the jury in its

---

[3] Hudspeth has made no affirmative statements as to whether it has retained any of its expert witnesses or whether Messrs. Moss and Condon's employment at Hudspeth & Associates regularly requires them to provide expert testimony. If any of Hudspeth's witnesses have been retained or if Messrs. Moss and Condon regularly provide expert testimony, the witnesses should be excluded for failure to disclose an expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Civ. P. 37(c)(1). Defendants address Hudspeth's attempt to comply with Fed. R. Civ. P. 26(a)(2)(C)'s disclosure requirements below.

determination of critical issues in [the] case." <u>Specht v. Jensen</u>, 853 F.2d 805, 807 (10th Cir. 1988).  At its core, this is a "common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved." <u>Id.</u> (quotation omitted).

Importantly, an expert may not testify as to the applicable law because that is within the sole province of the trial judge. <u>Id.</u>  Permitting an expert to instruct the jury about the applicable principles of law is reversible error and impermissibly delegates the decision of the law of the case to the jury. <u>Id.</u> at 807-08 (reversing due to admission of expert testimony where expert attempted to define the law of the case). Finally, in addition to the Rule 702 limits of expert testimony, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

**B.    The Court Should Preclude Hudspeth from Qualifying Mr. Matsuo, Defendant's Project Manager, as its Expert Witness**

In its initial expert witness disclosure, Hudspeth took the unusual step of naming Allan Matsuo, the principal of Defendant Matsuo Engineering, LLC as its expert witness. Hudspeth named Mr. Matsuo as an expert in "General Construction Contracting" and then provided a list of nine opinions, purportedly supported by testimony from Mr. Matsuo's deposition.  The cited opinions fall into two categories:  (i) opinions regarding the law; and (ii) opinions about what a reasonable contractor would do.

First, Hudspeth discloses the following opinions that are legal conclusions:

C.  That a general contractor has a duty to convey its position on the contract when asked.

G.  When as [sic] contractor is bidding a job there is no requirement that it make assumptions as to worst-case scenario(s).

I.  That the abatement subcontractor (Hudspeth) should have been notified of and provided a copy of the August 16, 2013 letter from GSA to MC denying MC's request for payment for additional ACM quantities on the second floor of the New Customs House.

(Ex. 3 at 2-3 (Matsuo Opinions C, G, and I) (citations omitted)).  Experts may not testify as to legal conclusions as those are within the province of the trial judge and permitting such testimony is likely to confuse the jury.  Specht v, 853 F.2d at 807-08.  Disclosed Opinions C, G, and I would all instruct the jury as to what the law requires.  They are therefore not a proper subject of expert testimony.  Id.  Accordingly, the Court should not permit Hudspeth to offer opinions C, G and I.

The remaining opinions are not expert opinions.  They merely state Mr. Matsuo's beliefs as to the expectations of a reasonable subcontractor, e.g. "[t]hat it is reasonable for a subcontractor to expect the general contractor would convey interpretation of the contact."  (Id. at 2 (Matsuo Opinion D)).  These opinions do not require scientific, technical, or other specialized knowledge and are therefore not proper subjects for expert testimony.  Fed. R. Evid. 802.  These opinions do not require any specialized knowledge about construction, Federal procurement contracts, asbestos, demolition or other topics where expert testimony may be necessary for a jury to understand the parties' performance of the contract at issue here.  The jury does not need an expert to tell them what a reasonable party to a contract would do generally.  If they did, a

"contracting" expert would be permitted in every case involving a contract. The Court should find that the disclosed opinions for Mr. Matsuo are not appropriate subjects of expert testimony and preclude Hudspeth from calling Mr. Matsuo as an expert witness.[4]

In the alternative, Defendants ask the Court to preclude Hudspeth from calling Mr. Matsuo as an expert witness pursuant to Fed. R. Evid. 403, which permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, the jury will likely be misled and confused if the Court permits Hudspeth to call one of Defendants' employees, certify them as an expert, and then proceed to cross-examine and/or impeach their own expert using statements from that witness's deposition. Given the subject matter and that Mr. Matsuo was not deposed as an expert witness, the prejudice to Defendants from such an atypical tactic far outweigh the probative value of extracting portions of statements from Mr. Matsuo's fact witness deposition testimony and twisting it into expert testimony that will somehow benefit Hudspeth.

Accordingly, the Court should preclude Hudspeth from calling Mr. Matsuo as an expert witness pursuant to both Fed. R. Evid. 802 and 403.

### C. Hudspeth's Employee Cannot Give Expert Opinions Formed For Trial

Hudspeth named two of its employees, Messrs. Moss and Condon, as experts in

---

[4] As these opinions are not proper subjects for expert testimony, Defendants are not objecting to Hudspeth calling Mr. Matsuo as a witness. Defendants only object to Hudspeth calling Mr. Matsuo as an expert witness.

the general area of asbestos abatement. As non-retained experts, Hudspeth was not required to disclose their qualifications as experts. Although Defendants understand that Messrs. Moss and Condon, as Hudspeth employees on the Project, likely have personal knowledge of some of the facts at issue, Defendants reserve the right to fully test their qualifications in their proffered fields of expertise during voir dire.

As non-retained experts, the Court should limit their testimony to the opinions and conclusions they reached as participants on the Project. <u>Scholl v. Pateder</u>, 2011 WL 2473284, at *4-6 & n.3 (prohibiting non-retained expert from testifying about opinions not formed contemporaneously with their involvement in the underlying facts) (D. Colo. June 22, 2011). The rules required Hudspeth to disclose any opinion extending beyond those reached as project participants in an expert report and Hudspeth provided no such report for Messrs. Moss and Condon. At this time, Defendants are unable to determine which of the proposed opinions in Hudspeth's initial expert disclosures were made contemporaneously by Messrs. Moss and Condon and which may have been formulated in anticipation of trial. Defendants request an Order from the Court limiting their testimony, as set forth above.

Additionally, Hudspeth seeks to have both witnesses opine that the amounts sought by Hudspeth for its work are of "reasonable value." (Exhibit 3 at 5 (Moss Opinion C), 7 (Condon Opinion D)).[5] Such testimony is the bailiwick of cost experts and accountants and Hudspeth has not offered either Mr. Moss or Mr. Condon as a cost expert. Accordingly, Defendants submit that Messrs. Moss and Condon are not

_____

[5] These opinions are referred to as "Moss Opinion C" and "Condon Opinion D."

qualified to provide cost-based opinions given the areas of expertise disclosed by Hudspeth.

Finally, for Mr. Condon and as discussed above, the Court should find that specialized knowledge of "General Construction Contracting" is not necessary in this case to assist the jury to understand the pertinent facts. Accordingly, it is not a valid subject for expert testimony. See Fed. R. Evid. 702; supra at 9-10. Specifically, Mr. Condon's proposed testimony that "For contractual provisions related to quantities of asbestos containing material and types to be removed, the customs, practices, and usage in the asbestos abatement industry is to rely on the report as to those quantities" is not expert testimony. (Ex. 3 at 6-7 (Condon Opinion C)). The unremarkable concept that a person performing a contract should rely on the terms of that contract is certainly within the ken of a layperson. Thus, the Court should not permit Hudspeth to qualify Mr. Condon as an expert in "General Construction Contracting" for the purposes of rendering such opinions and should preclude Mr. Condon from offering the same.

With respect to rebuttal, Hudspeth seeks to make Mr. Condon a scheduling and cost expert despite not offering him as an expert in cost, or construction accounting, or scheduling. (Ex. 4 at 2-5 (offering 14 additional opinions regarding the time and cost impacts of various events on the Project)). Mr. Condon apparently formed these additional opinions in response to Defendants' expert reports, i.e. in preparation for trial. Such opinions are clearly beyond the scope of the conclusions Mr. Condon reached during his involvement on the Project and are of the type prepared by retained expert witnesses. To provide such testimony would transform Mr. Condon into a retained

expert.  See Scholl, 2011 WL 2473284 at *4-5.  Because Hudspeth did not prepare and disclose an expert report on these opinions for Mr. Condon, Hudspeth failed to meet its disclosure obligations and the Court should preclude Mr. Condon from testifying about any of the rebuttal opinions.  See Cook, 233 F.R.D. at 600 & n.3.

### D.    The Court Should Exclude the Testimony of Kylee Samuels

Hudspeth failed to meet its expert disclosure obligations for Ms. Samuels and her testimony should be excluded.  In its rebuttal expert disclosure, Hudspeth disclosed Ms. Samuels of Scheduling Consultants, Ltd. as an expert in construction scheduling.  (Ex. 4 at 5).  Ms. Samuels' disclosure did not list any of the opinions or facts about which she is expected to testify as required by Fed. R. Civ. P. 26(a)(2)(C)(ii).  Hudspeth offered no justification for its failure to meet its disclosure requirements.  For this reason alone, the Court should preclude Hudspeth from calling Ms. Samuels as an expert witness.  See Cook, 233 F.R.D. at 600 & n.3.  Because Ms. Samuels' testimony regarding scheduling, as described in the disclosure, would necessarily involve scientific, technical and specialized knowledge about schedule construction and analysis, the Court should not allow Hudspeth to call Ms. Samuels as a fact witness either.[6]  See Cook, 233 F.R.D. at 602 (finding that a party could not call expert in epidemiology at DOE nuclear facilities as a non-expert based on their personal knowledge, where party that failed to disclose

---

[6] Defendants also note that Hudspeth's recent attempt to amend its initial disclosures to include Ms. Samuels is not timely.  Hudspeth had an obligation to supplement its Rule 26(a) disclosures "in a timely manner."  Fed. R. Civ. P. 26(e)(1).  Ms. Samuels was disclosed by Defendants in their initial disclosures and subsequently identified in Defendants' document production.  Hudspeth certainly could have amended its initial disclosures in a timely manner prior to this late date.  Accordingly, Ms. Samuels' testimony should be precluded as a sanction for failure to supplement initial disclosures pursuant to Fed. R. Civ. P. 37(c)(1).

witness as an expert). Thus, the Court should preclude Hudspeth from calling Ms. Samuels as a witness.

In the event that that the Court permits Hudspeth to call Ms. Samuels, the Court should limit Ms. Samuels' testimony to the schedule consulting work she conducted on the Project as Ms. Samuels is not a retained expert and Hudspeth did not disclose an expert report for Ms. Samuels. Scholl v. Pateder, 2011 WL 2473284, at *4-6 & n.3 (prohibiting non-retained expert from testifying about opinions not formed contemporaneously with their prior involvement) (D. Colo. June 22, 2011).[7]

### E. The Court Should Exclude the Testimony of Kevin Troyer

Hudspeth also failed to meet its expert disclosure obligations for Mr. Troyer. In its rebuttal expert disclosure, Hudspeth disclosed Mr. Troyer of Terracon Consulting as an asbestos abatement and survey expert. (Ex. 4 at 6). Mr. Troyer's disclosure did not list any of the opinions or facts about which he is expected to testify as required by Fed. R. Civ. P. 26(a)(2)(C)(ii). Hudspeth offered no justification for its failure to meet its disclosure requirements. For this reason alone, the Court should preclude Hudspeth from calling Mr. Troyer as an expert. See Cook, 233 F.R.D. at 600 & n.3. Because Mr. Troyer's testimony regarding asbestos abatement and surveys as described in the disclosure would necessarily involve the scientific, technical and specialized knowledge about those subjects, the Court should not allow Hudspeth to call Mr. Troyer as a fact witness either.[8] See Cook, 233 F.R.D. at 602.

---

[7] Defendants are unable to specifically address which opinions should be precluded as Hudspeth failed to disclose the specific opinions of Ms. Samuels.

[8] Like its disclosure for Ms. Samuels, Hudspeth's attempt to amend its initial disclosures

In the event that that the Court permits Hudspeth to call Mr. Troyer, the Court should limit Mr. Troyer's testimony to the Walsh Engineering study that was conducted on the Project as Mr. Troyer is not a retained expert and Hudspeth did not disclose an expert report for Mr. Troyer. Scholl v. Pateder, 2011 WL 2473284, at *4-6 & n.3.[9]

III. **Conclusion**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion and preclude Hudspeth from (1) calling Mr. Matsuo as an expert witness; (2) having Mr. Moss testify about Moss Opinion C; (3) having Mr. Condon testify about his Condon Opinion D and the opinions disclosed in Hudspeth's rebuttal expert disclosure; (4) calling Ms. Samuels as a witness; (5) calling Mr. Troyer as a witness; and (6) having any of Hudspeth's non-retained witnesses testify about opinions formed specifically for trial.

---

to include Mr. Troyer is not timely. Mr. Troyer was identified in discovery documents and, accordingly, Mr. Troyer's testimony should be precluded for failure to supplement initial disclosures. See Fed. R. Civ. P. 26(e)(1), 37(c)(1).

[9] Defendants are unable to specifically address which opinions should be precluded as Hudspeth failed to disclose the specific opinions of Mr. Troyer.

Respectfully submitted,

Dated: March 10, 2015

*/s/ J. Douglas Scherling, Esq.*
J. Douglas Scherling, Esq.
7086 Bell Drive
Colorado Springs, CO 80920
Tel: 719-229-7739
E-mail: JDScherling@gmail.com

*/s/ Edward T. DeLisle, Esq.*
Edward T. DeLisle, Esq.
Maria L. Panichelli, Esq.
Cohen Seglias Pallas Greenhall & Furman, P.C.
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA 19103
Tel: 215-564-1700
Fax: 215-564-3066
E-mail: edelisle@cohenseglias.com

*Attorneys for Defendants/Counterclaimants*
*Centerre Construction, Inc.*
*Matsuo Engineering, LLC*
*Matsuo Engineering Centerre Construction A Joint*
*Venture*
*Matsuo-Centerre A Joint Venture, LLC, and*
*Berkley Regional Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00087 CMA-KMT

UNITED STATES OF AMERICA, for the use and benefit of HUDSPETH &
ASSOCIATES, INC., a Colorado corporation,

     Plaintiff,

v.

CENTERRE CONSTRUCTION, a Colorado Corporation;
MATSUO ENGINEERING, LLC, a Colorado Limited Liability Company;
MATSUO ENGINEERING CENTERRE CONSTRUCTION, a Joint Venture;
MATSUO-CENTERRE A JOINT VENTURE, LLC, a Colorado Limited Liability
Company; and
BERKLEY REGIONAL INSURANCE COMPANY, a Delaware corporation,

     Defendants and Third Party Plaintiffs.

vs.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Company

     Third-Party Defendant.

## ORDER

Upon consideration of Defendants/Third-Party Plaintiffs' Motion to Exclude
Expert Testimony and any response thereto, I hereby ORDER that such motion is
GRANTED.

Plaintiff is precluded from: (1) calling Mr. Matsuo as an expert witness; (2) having
Mr. Moss testify about Moss Opinion C; (3) having Mr. Condon testify about his Condon
Opinion D and any of the opinions disclosed in Hudspeth's rebuttal expert disclosure;
(4) calling Ms. Samuels as a witness; (5) calling Mr. Troyer as a witness; and (6) having

any of Hudspeth's non-retained witnesses testify about opinions formed specifically for trial.

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00087 CMA-KMT

UNITED STATES OF AMERICA, for the use and benefit of HUDSPETH &
ASSOCIATES, INC., a Colorado corporation,

      Plaintiff,

v.

CENTERRE CONSTRUCTION, a Colorado Corporation;
MATSUO ENGINEERING, LLC, a Colorado Limited Liability Company;
MATSUO ENGINEERING CENTERRE CONSTRUCTION, a Joint Venture;
MATSUO-CENTERRE A JOINT VENTURE, LLC, a Colorado Limited Liability
Company; and
BERKLEY REGIONAL INSURANCE COMPANY, a Delaware corporation,

      Defendants and Third Party Plaintiffs.

vs.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Company

      Third-Party Defendant.

**D.C.Colo.L.R. 7.1A CERTIFICATION OF COMPLIANCE FOR DEFENDANTS/THIRD-
PARTY PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY**

Pursuant to D.C.Colo.L.R. 7.1A, the undersigned counsel hereby certifies that,
after several attempts, counsel for Defendants and Third Party Plaintiffs discussed the
issues in the attached motion with counsel for Plaintiff and Third-Party Defendant on
March 10, 2015, that the parties were unable to resolve the issues in the attached
motion and that, on information and belief, Plaintiff and Third-Party Defendant intend to
oppose this motion.

Respectfully submitted,

Dated: March 10, 2015

*/s/ J. Douglas Scherling, Esq.*
J. Douglas Scherling, Esq.
7086 Bell Drive
Colorado Springs, CO 80920
Tel: 719-229-7739
E-mail:  JDScherling@gmail.com

*/s/ Edward T. DeLisle, Esq.*
Edward T. DeLisle, Esq.
Cohen Seglias Pallas Greenhall & Furman, P.C.
United Plaza, 19th Floor, 30 South 17th Street
Philadelphia, PA 19103
Tel: 215-564-1700  Fax: 215-564-3066
edelisle@cohenseglias.com

*Attorneys for Defendants Centerre Construction, Inc.*
*Matsuo Engineering, LLC, Matsuo Engineering*
*Centerre Construction A Joint Venture*
*Matsuo-Centerre A Joint Venture, LLC, and*
*Berkley Regional Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2015 a true and correct copy of foregoing Defendants/Third Party Plaintiffs' Motion to Exclude Expert Testimony was filed with the clerk of court via CM/ECF, which will send an email notification of this filing to the following individuals:

Reed F. Morris, Esq.
Craig T. Watrous, Esq.
Mallon & Lonnquist, LLC
3200 Chery Creek South Drive
Denver, CO 80209
*Attorneys for the Plaintiff*

*/s/ J. Douglas Scherling, Esq.*
J. Douglas Scherling, Esq.
7086 Bell Drive
Colorado Springs, CO 80920
Tel: 719-229-7739
E-mail:  JDScherling@gmail.com

*/s/ Edward T. DeLisle, Esq.*
Edward T. DeLisle, Esq.
Maria L. Panichelli, Esq.
Cohen Seglias Pallas Greenhall & Furman, P.C.
United Plaza, 19th Floor
30 South 17th Street
Philadelphia, PA 19103
Tel: 215-564-1700
Fax: 215-564-3066
E-mail: edelisle@cohenseglias.com