IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00087-CMA-KMT

UNITED STATES OF AMERICA, for the use and benefit of HUDSPETH & ASSOCIATES, INC., a Colorado corporation,

    Plaintiffs,
vs.

CENTERRE CONSTRUCTION, a Colorado Corporation
MATSUO ENGINEERING, LLC, a Colorado Limited Liability Company
MATSUO ENGINEERING CENTERRE CONSTRUCTION, a Joint Venture
MATSUO-CENTERRE A JOINT VENTURE, LLC, a Colorado Limited Liability Company
BERKLEY REGIONAL INSURANCE COMPANY, a Delaware corporation,
MATSUO ENGINEERING CENTERRE CONSTRUCTION A JOINT VENTURE, LLC, a Colorado Limited Liability Company

    Defendants And Third-Party Plaintiffs,

Vs.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Company

    Third-Party Defendant.

_____

**PLAINTIFF/THIRD-PARTY DEFENDANT'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE [DOC. 52]**
_____

Plaintiff, Hudspeth & Associates ("Hudspeth" or "Plaintiff") and Third-Party Defendant, Fidelity and Deposit Company of Maryland (together, singularly as "Plaintiff"), by and through counsel, hereby submit their Response to Defendants' Motion in Limine to Exclude Evidence Not Produced in Discovery and Hearsay Fed. R. Civ. P. 1006 Summaries [Doc. 52] ("**Defs. Mot. in Lim.**"), and in support thereof, state as follows:

1

**I.     INTRODUCTION AND NOTE AS TO CONSULTATION.**

Defendants' Motion in Limine [Doc. 52] contained no certificate of consultation in violation of D.C.COLO.LCivR 7.1(a), Fed. R. Civ. P. 37(a)(1) was filed and in violation of the Discovery Dispute Resolution Procedures. Plaintiff notified Defendants of its surprise to see such a motion, and Defendants later filed a certificate [Doc. 54], acknowledging all of the issues set forth in Defendants' Motion in Limine are as a result of "discovery issues" and the extent of the consultation was set forth in its exhibits.

Plaintiff's last correspondence with Defendants was a continued effort to consult on the underlying "discovery issues," and while expressing disagreement on Defendants' characterization the Rule 30(b)(6) deposition, did request clarification as to documents sought, the basis of the requests for documents, and offering an opportunity for additional information, if any.  Defendants rebuffed Plaintiff's overtures, stating simply that "we will need to agree to disagree" and nothing about a motion. **Exhibit 1**.

Plaintiff has produced documents in its possession requested in discovery, and these documents (including summaries) are admissible. Any disclosure of summaries to address the voluminous scope of Defendants' 30(b)(6) deposition was not only harmless, but necessary of Plaintiff to prepare its witness.

**II.     LEGAL STANDARDS.**

The requirement of Rule 30(b)(6) to "describe with reasonable particularity the matters for examination" has been interpreted in *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 584 (D. Kan. 2008) as to require,

> …care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned … The responding party must make a conscientious, good-faith endeavor to designate the persons … and to prepare those persons in order that they can answer fully,

completely, and in a non-evasive manner, the questions as to the relevant subject matters … the corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them ….

See also, *Health Grades, Inc., v. MDx Med., Inc.* 2013 U.S. Dist. LEXIS 59271, 11-12 (D. Colo. Apr. 25 2013) (Magistrate Boland), denying sanctions where the designated Rule 30(b)(6) witnesses "generally were knowledgeable and well informed in most areas of inquiry" *citing QBE Ins. Corp v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 2012 WL 266431 at *13 (S.D. Fla. 2012), "[a]bsolute perfection is not required of a 30(b)(6) witness. The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation."

Rule 37(c)(1) provides that documents or evidence requested in discovery may be precluded unless such failure was substantially justified or harmless. Whether any failure to disclose is harmless or justified under Rule 37(c) involves several factors including, "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011).

Fed. R. Evid. 1006 allows summaries or charges to prove the content of voluminous writings or recording that cannot be conveniently examined in court, while Fed. R. Evid. 803(6) permits records of acts or events of regularly conducted activities.

## III. ARGUMENT.

Though Defendants have not characterized their Motion as such, it appears that the basis of the discovery issues fall into two categories: (1) Plaintiff's original estimate documents, (2) Plaintiff's summary sheets and testimony from the 30(b)(6) deposition.

### A. Plaintiff's Bid or Estimate Documents.

Defendants point to the testimony of Plaintiff's Rule 30(b)(6) witness, Daniel Moss, that the estimate sheet Plaintiff produced was a "summary tab on a spreadsheet [Plaintiff] used for putting bids together." Mot. in Lim. ¶12. Plaintiff did, on January 8, 2013, provide a spreadsheet consistent with Mr. Moss' testimony. Defendants, in their letter[1] of January 13, 2015, even acknowledge the spreadsheet that Plaintiff provided was consistent with the deposition testimony of Mr. Moss. *Id.* As it is clear that Defendants received the exact document Mr. Moss testified to regarding the original 2011 estimate, the characterization of Plaintiff to have "withheld" this document (Mot. in Lim. at ¶13) or that it "was not produced" (*Id.* at ¶12) is simply incorrect. Defendants may believe there should be *more* documents related to the original 2011 estimate, but Plaintiff has produced what they have.

Any late disclosure of this document provided on January 8, 2015 was harmless and any error justified. After Mr. Moss indicated that there may be other spreadsheet tabs, the disclosure was again examined multiple times. Upon discovering that the .pdf disclosed was only a single "tab" of the sheet in question, Defendants were immediately provided the full sheet. This was explained, and Defendants do not argue bad faith.

---

[1] Exhibit 7 to Def. Mot. in Lim. ("… Hudspeth did provide the subject 'estimate' spreadsheet last week which included five (5) tabs which appear to 'roll up' into the Total cost sheet that was provided with Hudspeth's initial disclosures…")

4

There was no bad faith. Defendants never sought to take the deposition of the individual Hudspeth identified as having prepared the estimate. Numerous documents in this case, including dozens of subcontract amendment Defendants have executed, reflect the parties' (at one time) agreed upon understandings of the subcontract's scope. While Defendants do not argue the relevancy of the estimate given the nature of the contract, Defendants did receive it in advance of their expert disclosures. Defendants have not demonstrated any basis for preclusion of any evidence under Rule 37.

Defendants' arguments related to the PIFF documents summarizing costs have no bearing on the original estimate or bid Defendants requested in discovery. *See*, Mot. In Lim. ¶ 11. As Mr. Moss testified, "The PIFF was the spreadsheet [Plaintiff] used to track costs." Exh. 3 to Mot. in Lim. at 165:3-4. Mr. Moss testified that he did not have anything to do with the estimate[2] on the Project (*Id.* at 165:12) and the PIFF document Defendants allege was incomplete was not a set in stone budget, changed frequently, and was used when he took over the project after the first phase of the Project was complete. *Id. at* 167:2 – 168:20. While Plaintiff has produced all documents related to the bid/estimate, as is clear from the testimony, this PIFF is not in this category. Defendants do not point this Court, nor Plaintiff, to any written discovery requests related to this additional job cost tracking information, and when specifically requested to do so by Plaintiff, in consultation, Defendants declined. Exh. 1.

**B. Plaintiff's Summary Sheets Produced at the Rule 30(b)(6) Deposition.**

This payment dispute at issue spans 22 separate applications for payment across more than two (2) years. Underlying the pay applications involves work pursuant

---

[2] Nor was the estimate/bid on the Project even a subject of the Rule 30(b)(6) Notice.

to the base Subcontract with an additional 90 change orders for additional work above and beyond the base Subcontract. Defendants noticed a Rule 30(b)(6) deposition requesting Plaintiff to produce a witness to speak to these (~90) change orders, (22) pay applications, and Plaintiff's damages calculated over the course of the Project. To offer this Court a sense of scope, Plaintiff's files in this case that are the starting points for Defendants' Rule 30(b)(6) notice relating to Change Orders (H&A-004444-005319) and Pay Applications (H&A-008303-008699) total over 1,200 pages.

Plaintiff's 30(b)(6) witness came well-prepared to address this voluminous data. Plaintiff prepared, and provided at the Rule 30(b)(6) deposition, four spreadsheets summarizing the change orders, cross referencing pay applications, and totaling the owed amounts Plaintiff seeks as damages. Defendants seek to preclude these summaries under Rule 1006 under the apparent theory that Plaintiff's witness could not state as "accurate" one page out of the ~1,200 pages underlying the 30(b)(6) notice.

Defendants recognize that the summary spreadsheets in question were produced by Plaintiff in preparation for the deposition. Defs. Mot. In Lim., ¶13. While troubled by the scope and breadth of the notice, Plaintiff prepared for the deposition, and prepared its witness, including 7 pages (4 exhibits) necessary. Defendants, however, argue that the documents prepared for, and necessary in providing testimony for, the Rule 36(b)(6) deposition must be excluded for failure to produce them earlier in discovery. Defendants cite no authority for this proposition, and go so far as fault Mr. Moss for mere reference to these summary documents.

In response to the question regarding the a pay application exhibit that Mr. Moss could not, in isolation, sate was "accurate," Mr. Moss freely admitted "If you're asking

me if I remember every single line item out of 124 line items on each pay application and the date you're referencing for each one, no, I do not remember exactly each dollar value associated with that at this time…". Exhibit 2, Moss Deposition Excerpts at, 50:18-50:23. The production of the summaries was necessarily compelled by the 30(b)(6) notice, and not once did Defendants claim there was any hardship in receipt of or examination of Plaintiff's witness regarding the summaries. There was no hardship.

Defendants also appear to argue that the summary documents are inadmissible under Rule 1006 for failure of production of additional underlying documents. Taking directly from the line of testimony Defendants point to it is clear that all of the information, including the lacking "accounting system" information for answering all of Defendants' questions was contained in the very spreadsheets themselves. Examining the single isolated document in front of the witness at the time (Exhibit 136, a version of Pay Application No. 19), Defendants seek the preclusion of all documents summarizing the relevant portions of some 1,200 pages of documents.

Deposition Exhibit 129 identified the line items of Plaintiff's damages associated with Pay Application No. 19. The central line of questioning involved two versions of Pay Application No. 19, Exhibit 136[3] and Exhibit 137, the later reflecting the final, submitted version of the pay application. **Exhibit 3** (Depo. Exh. 137, Pay App. 19, highlighted)

As Plaintiff's counsel explained regarding the verbal request on the record regarding the "accounting system" information, Mr. Moss's testimony was simply a matter of comparing "the number" corresponding to the final pay application with the pay

---

[3] The earlier version of Pay Application No. 19 in front of the witness when he was asked if it was "accurate."

application in front of him, that "It's not that there is additional backup information or other things that would verify its accuracy." Exh. 2, 54:5-13.  Off the record, counsel had what Defendants' counsel deemed productive[4], and thereafter, Mr. Moss explained his reference to one of the summary exhibits "was to see what changes had been made to certain pay applications."  Exh 2, 57:20 - 58:14; **Exhibit 4** (Depo Exh. 129 summary sheet).  The exhibits now before the witness being Exhibit 137[5] and Exhibit 136[6] and the witness having now testified that Exhibit 129 contained the data to distinguish between pay applications, the line of questioning was abandoned. Examined through the lens of Summary Exhibit 129, all of the documents or "accounting system" information necessary for Defendants' examination were in front of counsel.[7]  The Rule 30(b)(6) deposition was really not a search for answers, but a strategy to manufacture an argument that no summaries may be used by Plaintiff.

The summary exhibits that Plaintiff intends to introduce are proper summaries of information pursuant to 1006. The underlying documents are all admissible, and Defendants do not claim that this information is inaccurate. Finally, the Civil Practice Standards provided a process for handling voluminous evidence (Civ. Practice Standard 43.1B(e)) in this case, including exchange of exhibits after the Final Pretrial Conference.

---

[4] "The record can reflect that Mr. Morris and I had a conference in the call, which, I believe, was productive."  Exh. 2, 56:11-13.
[5] The actual/final Pay Application No. 19.
[6] The earlier, and subsequently revised version of Pay Application No. 19 counsel had inquired whether it was "accurate."
[7] Deposition Exhibit 129, for amounts billed on Pay Application 19 totals the exact amount set forth on Exhibit 137 (Pay App. 19: $160,891.16 [taking the sum total of line 14, partial = $4,028.40, and lines 114 through 122 of Exhibit 129 = $156,862.7] ). Another summary document from the "accounting system" would merely provide the same information.  See Exh. 5 hereto.

DATED this 10th day of March, 2015.

                                        Respectfully Submitted,

                                        s/Reed F. Morris
                                        Reed F. Morris
                                        Craig T. Watrous
                                        Mallon Lonnquist Morris & Watrous, PLLC
                                        3200 Cherry Creek South Drive
                                        Denver, Colorado  80209
                                        Tel: 303-927-0011

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2015, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE** was filed with the Clerk of the U.S. District Court for the District of Colorado using the CM/ECF system, and served upon the following Parties' email addresses:

| | |
|---|---|
| Edward T. DeLisle, Esquire | J. Douglas Scherling, Esq. |
| E-mail: edelisle@cohenseglias.com | E-mail: JDScherling@gmail.com |

Attorneys for Defendants:
Centerre Construction, Inc.
Matsuo Engineering, LLC
Matsuo Engineering Centerre Construction A Joint Venture
Matsuo-Centerre A Joint Venture, LLC,
Berkley Regional Insurance Company
Matsuo Engineering Centerre Construction A Joint Venture, LLC

                                                                        s/Reed F. Morris