IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00087-CMA-KMT

UNITED STATES OF AMERICA, for the use and benefit of HUDSPETH & ASSOCIATES, INC., a Colorado corporation,

    Plaintiffs,

vs.

CENTERRE CONSTRUCTION, a Colorado Corporation
MATSUO ENGINEERING, LLC, a Colorado Limited Liability Company
MATSUO ENGINEERING CENTERRE CONSTRUCTION, a Joint Venture
MATSUO-CENTERRE A JOINT VENTURE, LLC, a Colorado Limited Liability Company
BERKLEY REGIONAL INSURANCE COMPANY, a Delaware corporation,
MATSUO ENGINEERING CENTERRE CONSTRUCTION A JOINT VENTURE, LLC, a Colorado Limited Liability Company

    Defendants And Third-Party Plaintiffs,

vs.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Company

    Third-Party Defendant.

_____

**PLAINTIFF/THIRD-PARTY DEFENDANT'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY [DOC. 65]**
_____

Plaintiff, Hudspeth & Associates ("Hudspeth" or "Plaintiff") and Third-Party Defendant, Fidelity and Deposit Company of Maryland (together, singularly as "Plaintiff"), by and through counsel, hereby submit their Response to Defendants' Motion in Limine to Exclude Expert Testimony [Doc. 65] ("Motion"), and in support thereof, state as follows:

1

## I. INTRODUCTION.

The preclusion of testimony Defendants seek here generally falls into three categories: (1) the testimony based on the specialized knowledge of Allan Matsuo, Defendants' principal, (2) the testimony based on the specialized knowledge of Plaintiff's employees (Condon and Moss), and (3) Plaintiff's additional disclosures of two witnesses Defendants hired, known to Defendants, and which Defendants previously disclosed (Samuels and Troyer). Defendants' arguments must be rejected as the testimony offered is relevant, not *unfairly* prejudicial, and generally of the same nature of "expert" testimony Defendants offer by way of their own retained experts in this case.

## II. LEGAL STANDARDS.

This Motion is generally governed by Rule 702 of the Federal Rules of Evidence, as to when, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise. "As interpreted by the Supreme Court, Rule 702 requires that an expert's testimony be both reliable, in that the expert is qualified to testify regarding the subject, and relevant, in that it will assist the trier of fact." *Hubbell v. Carney Bros. Const., No.* 05-CV-00026-CMA-KLM, 2011 WL 1060239, at *2 (D. Colo. Mar. 23, 2011), *citing Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–92 (1993) and *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004).

Rule 37(c)(1) provides that documents or evidence requested in discovery may be precluded unless such failure was substantially justified or harmless. Whether any failure to disclose is harmless or justified under Rule 37(c) involves several factors including, "(1) the prejudice or surprise to the party against whom the testimony is

offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011). Whether a disclosure violation is justified or harmless is in the discretion of the trial court, while failure of moving party to show how they are prejudice is grounds for denying sanction of preclusion under Rule 37(c)(1). *Neiberger v. FedEx Ground Package Sys.*, 566 F.3d 1184, 1192 (10th Cir. (Colo.) 2009). When determining the appropriate sanction, Rule 37 "require[s] the court to keep considerations of justice in mind when imposing sanctions for rule violations." *Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996).

### III. ARGUMENT.

#### A. Testimony of Alan Matsuo.

Defendants' objections to Plaintiff's disclosure of Mr. Matsuo under Rule 26(a)(2)(C) is two-fold: that the jury would be "mislead and confused" if one of Defendants' principals (and a primary point person with the GSA on the Project) were to be offered against Defendants in this case, and that the opinions denominated C, G and I disclose "what the law requires" and are impermissible "expert" testimony as such. Plaintiff's expert disclosures are provided as Exhibit 1 hereto for the Court's review.

F.R.E 403 permits the exclusion of relevant evidence if its prohibitive value is substantially outweighed by the danger of confusion or unfair prejudice. However, "unfair prejudice" as used in Rule 403 "is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *Dollar v. Long Mfg., N. C., Inc.*, 561 F.2d 613, 618 (5th Cir.

3

1977).  Defendants have presented no arguments substantiating a claim that Mr. Matsuo's testimony would be "unfair."

Defendants' only direct argument as to "prejudice" is that Mr. Matsuo was "not deposed as an expert witness," however, Defendants do not provide any authority on why the testimony should be precluded on such grounds. It appears that what Defendants are really arguing is that had they known Mr. Matsuo would offer the testimony Defendants now seek to preclude, or had they known Plaintiff's questions ahead of time, Mr. Matsuo would have been prepared for his deposition differently.  All of Mr. Matsuo's disclosed expert testimony—including Opinions C, G, and I—is not only permissible under F.R.E 702 and 403, each of these statements are of a party opponent and against Defendants' interest and admissible under F.R.E. 801(d)(2) and 804(b)(3).

In this case, Plaintiff has specifically alleged, *inter alia*, the following relevant aspects of Defendants' conduct giving rise to their liability:

- that Defendants are "in material breach of the Subcontract for [their] concealment and nondisclosure of information related to payment and approval by the GSA."  (Amended Complaint at ¶97);

- that "concealing information from both GSA and Hudspeth when Added Scope Work was known to [Defendants] acts as a waiver…" (Id. at ¶100);

- that Defendants are in further breach of the covenant of good faith and fair dealing by "concealing material information from Hudspeth" and for "directing Hudspeth to proceed with Added Scope Work with the intent to later assert that Hudspeth would not be paid for such work" *Id.* at ¶106.

Central to this case will be the conduct and actions of the parties in and around August 2013 when, as Plaintiff alleges, Defendants failed to convey to Plaintiff their positions on the Subcontract while at the same time Defendants were concealing from Plaintiff the fact that the GSA had already told Defendants it would not pay Defendants

4

for significant additional work that Defendants were directing Plaintiff to perform. Defendants' position, as to this same timeframe, is that Plaintiff was not reasonably requesting Defendants' position and and assurances but had, in fact, "abandoned" the Project prior to completing work on the second floor.

As an example of the type of testimony Mr. Matsuo provided at his deposition which Plaintiff identified and disclosed as an opinion it would offer in this case, Mr. Matsuo testified as to disclosed Opinion I as follows:

> Q. So at this point in time, I would like
> you to look at all three: Exhibits 60, 61 and 62.
> Okay? In Exhibit 60, MC is telling Hudspeth that […]
> "MC can only pay when we have been paid by GSA."
> Correct?
> A. Yes.
> Q. In Exhibit 61, MC is seeking payment for
> additional ACM [Asbestos] on the second floor from
> GSA, correct?
> A. Yes.
> Q. And then in Exhibit 62, GSA is denying
> that request for payment for additional ACM on the
> second floor, correct?
> A. Yes.
> Q. Should MC have given this August 16
> letter to its abatement contractor, given the
> communications that it gave the abatement contractor
> in Exhibit 60?
> MR. SCHERLING: Form.
> A. It appears that it should have been
> passed on.
>
> Matsuo Deposition at 108:11-109:6 (Exhibit 2)

Whether or not Hudspeth "abandoned" the Project or was reasonably seeking clarification and the position of Defendants is a material issue in this case. Opinion I of Mr. Matsuo directly relates to the duties of Defendants to notify Plaintiff of certain material information, specifically the letter from GSA that "should have been passed on."

5

Opinion C of Mr. Matsuo is that "a general contractor has a duty to convey its positon on the contract when asked."

The "law" in this case is not provided nor offered by Plaintiff through Mr. Matsuo's testimony based on his specialized knowledge. The "law" will be provided by the Jury Instructions in this case. For example, the Colorado Pattern Jury Instruction (30:15)[1] provides

> Every contract requires the parties to act in good faith and to deal fairly with each other in performing or enforcing the express terms of the contract. A party performs a contract in good faith when (his) (her) (its) actions are consistent with the agreed common purpose and with the reasonable expectations of the parties. The duty of good faith and fair dealing is breached when a party acts contrary to that agreed common purpose and the parties' reasonable expectations.

As to the duty of good faith and fair dealing, Mr. Matsuo offers qualified testimony useful to the trier of fact as to what the "reasonable expectations" are of the parties based on those duties. Mr. Matsuo's testimony, based on his un-challenged specialized knowledge and experience in construction contracting, is also relevant as to whether material information "should have been passed on" to Plaintiff, including a key communication from the GSA to Defendants (addressed to Mr. Matsuo) regarding the GSA declining payment to Defendants for certain asbestos abatement. Deposition Exhibit 62 provided here as Exhibit 3. Such testimony is only prejudicial to Defendants because it is relevant, material, and adverse. It is neither impermissible testimony as to the "law" nor the sort of "unfair prejudice" Rule 403 seeks to preclude.

---

[1] As this is a common law claim under Colorado law, though the jury instructions have yet to be tendered nor approved in this case, based on the Civil Practice Standards it is presumed that the Colorado Pattern Jury Instructions will be used and are, at this time, illustrative of a likely instruction on the "law" that will be given to the jury in this case.

In *Kerns v. Pro-Foam of S. Ala., Inc.*, 572 F. Supp. 2d 1303, 1310 (S.D. Ala. 2007), the Southern District of Alabama provides useful analysis where the court specifically rejected a defendant's invocation of the "buzzwords of 'undue prejudice'….[and] the effect of 'confusing the jury'" as mere "catchphrases" stating,

> If [Defendant's expert] has knowledge of relevant evidence that is otherwise admissible, and if defendant intends to call [the witness] at trial anyway, why would it be any more confusing or prejudicial for plaintiffs to elicit that evidence on direct examination rather than waiting to do so until cross-examination during defendant's case-in-chief? Either way, the result is precisely the same in terms of the evidence ultimately presented to the jury; therefore, defendant's assertion that allowing plaintiffs to call [the witness] will somehow confuse the jury is not compelling.

Here, Defendants motion states that they do not object to Plaintiff calling Mr. Matsuo in their case in chief. Defs. Motion at fn. 10. Whether or not the testimony is offered, and whether or not any witness is passed to the jury as an "expert" is not prejudicial where the jury is instructed that *all* witnesses are to be evaluated the same way. *See, e.g.,* Instruction No. 7, Credibility of Witnesses, Civil Final Jury Instructions, Judge Christine M. Arguello.[2]

The subjects of Mr. Matsuo's testimony are also on the same topics Defendants have endorsed through their own retained experts. While Defendants have carefully denominated one of their retained experts in this case, Susan McGourty, as testifying on "the impact to the Project Schedule due to Hudspeth's failure to complete its work in a timely fashion," (Motion at ¶2), Ms. McGourty's expert report contains specific opinions under the heading "Hudspeth & Associates Abandons the Project." Exhibit 4 at p. 6-8. Ms. McGourty opines that, "Correspondence at this time indicates that H&A

---

[2] available at: http://www.cod.uscourts.gov/Portals/0/Documents/Judges/CMA/Civil-Final-Jury-Instructions.pdf.

abandoned the project…" concluding that the project experienced certain delays "caused by H&A abandonment." *Id.*

As seen through the proffered testimony of Ms. McGourty, Defendants offer an interpretation of the events through their hired experts that communication reflected "abandonment" of the Project, where Plaintiff has alleged that it, at the time, "reasonably requested clarification" of Defendants' position which Defendants "failed to reasonably respond to Hudspeth's requests for clarifications and assurances." Amended Complaint ¶70 -71. Mr. Matsuo's opinions and statements based on his specialized knowledge that Plaintiffs' requests here were "reasonable" is of the same vein of "expert" testimony Ms. McGouty will testify to at trial.

Opinion G of Mr. Matsuo is that a subcontractor does not have a duty to "make assumptions as to worst case scenario(s)" when bidding a project. Defendants argue that such testimony amounts to mere opinions on "contracting," and that "the jury does not need an expert to tell them what a reasonable party to a contract would generally do." Motion at 9-10. While expressing their incredulity that a "contracting" expert is offered by Plaintiff at all, Defendants retained and disclosed expert opinions on the exact same topic—namely, standards during the contract bidding process.

While Defendants carefully denominated retained expert Curtis Johnson for purpose of their motion as one of "asbestos remediation, containment, and related unit costs," (Motion at p.2) as seen from Mr. Johnson's expert report, Mr. Johnson will provide opinions including "Expectations of an 'Experienced or Knowledgeable Asbestos Abatement Professional' in the Bidding Process." Exhibit 5 at p. 8-9. Mr. Matsuo is offered by Plaintiff to testify what a bidder is *not* expected to do (i.e., bid worst

8

case scenario), while Defendant's offer Mr. Johnson (disclosed on the same day as Mr. Matsuo by Plaintiff) to testify as to the contrary view on a subcontractor's expectations ("potential for investigation and sampling errors or limitations…presence of hidden pipes… expected to be able to extrapolate…") *Id.*

As to the remainder of Mr. Matsuo's opinions, Defendants object because they are "not expert opinions…merely … Mr. Matsuo's beliefs as to the expectations of a reasonable subcontractor." Motion at p. 9. As shown above, the opinions as to the "expectations of a subcontractor" are directly relevant to the duties of the parties, and offered by Plaintiff on the basis of Mr. Matsuo's un-challenged qualifications based on his experience and specialized knowledge. Based on Defendants' own expert disclosures, the expectations of a subcontractor and relative interpretation of the parties' conduct are material issues lending to the testimony of a qualified expert. *See generally*, reports of Defendants' Expert Johnson (Exh. 5) and Expert McGourty (Exh. 4).

**B. Hudspeth's Employee's Expert Opinions.**

Defendants argue that the testimony of Hudspeth's employees cannot be offered to the extent the opinions are "formed for trial" seeking that Opinion C of Daniel Moss, and Opinion D of Chris Condon be precluded. Mr. Condon was the Project Manager and Mr. Moss was an Assistant Project Manager on the Project. Defendants concede that these witnesses "likely have personal knowledge of some of the facts at issue" and that their disclosure under Rule 26(a)(2)(C) was due to their status as employees. That is correct—Mr. Condon and Mr. Moss are employees of Plainitff, not specifically

retained experts. Their duties not include regularly providing expert testimony. Exhibit 6 (Declaration of Chris Condon).

As noted in the Advisory Committee Notes to the 2011 Amendments to Rule 26,

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals <u>and employees of a party who do not regularly provide expert testimony</u>. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present. (emphasis added)

These witnesses, thus, fall within the category of expert disclosures that do not require production of an expert report. *See* F.R.C.P. 26(a)(2)(B).

Messrs. Moss and Condon have, in Opinions C and D respectively, been disclosed to opine that "amounts sought in this case … and which Plaintiff is contractually entitled to, are the reasonable value for the work and services performed by Hudspeth, and which amounts Defendants benefited…" Exh. 1. Their opinions as well as the figures are disclosed as finding their primary documentary support in the pay applications and change orders, such documentation *being created during this Project* and submitted to Defendants.

Defendants' analogy to the "treating physician" as to why Plaintiff's employees should be limited is overbroad and misplaced. In relying on *Scholl v. Pateder*, 2011 WL 24773284 (D. Colo. June 22, 2011), Defendants do not distinguish between opinions formed "during the course of treatment" in a personal injury case from those which may step beyond the bounds of Rule 26(a)(2)(C) as arguably not being necessary opinions of a doctor to contemporaneously do their job. In *Scholl*, the court considered that to

*treat* an injury might not necessarily involve the need of the expert to diagnose its *causation.* "In some cases, however, a treating physician may be required to form an opinion about the cause of an injury in order to properly treat it. In such cases, the physician may testify about his opinion regarding causation "to the limited extent that [the opinion was] a necessary part of a patient's treatment" without being considered a retained expert witness." *Id.*

In our case, the length of Plaintiff's involvement on the Project ran years, the duties and positions of the parties being almost continuously explored *during the Project*, and on a monthly (and at times daily) basis Plaintiff interacting with Defendants, submitting and negotiating with Defendants sundry change orders due to the significant amounts of unforeseen additional asbestos, pay applications, and receiving payment for the work it performed. Construction contracts require scheduling, have schedules, and involve payment for services. Defendants do not allege that any of the opinions Plaintiff expresses are new. Defendants' and Plaintiff's respective positions as to the scope of the Subcontract, allegations of liability, and the basis therefor, remain virtually unchanged—to the dollar—from where they were in August 2013. Defendants detailed and expansive counterclaims, third-party claims, disclosures, and expert reports have not changed Plaintiff's position it is owed more than $530,000 in this case—roughly the same figure and the same basis as it has always been. Defendants do not carry their burden to show any of Plaintiffs' opinions are not the consistent, project-based, opinions of Plaintiff's employees who Defendants were dealing with regularly throughout the project.

More specifically, Defendants offer three arguments as to why they should not be allowed to testify: a) that they have not been offered as a "cost expert" and b) they are not "qualified" to provide "cost-based opinions" and c) Defendants are "unable to determine which of the proposed opinions.. were made contemporaneously… and which may have been formulated in anticipation of trial." Motion at p. 11-12.

First, Defendants' argument that neither Condon nor Moss have been offered as a "cost expert" is at odds with Defendants seeking, by their very motion, to not allow the testimony and opinions that were disclosed for Condon or Moss related to the value of the services Plaintiff seeks in this case. Plaintiff has offered these two employees to testify as to the value of the services, has provided indication as to the value of the services they will testify to, and provided the basis of fact—including the project based payment submittals—as the foundation and documents related to those opinions.

Second, Defendants' objection that Mr. Moss and Mr. Condon are not qualified is not an actual objection to the knowledge, skill or experience either of them possesses. Defendants' argument is limited to the assertion that these witnesses are not qualified to offer the summary opinion disclosed because the word "cost" or "accounting" does not appear under the "Subjects" section of the disclosure. Defendants' position requires both a strained reading of Plaintiff's expert disclosures and is circular—that Plaintiff's expert disclosures stating the witnesses opinions as to costs is inadequate because it does not state they have an opinion as to costs. Defendants were put on notice, had previously taken an extensive 30(b)(6) deposition of Plaintiff related to the damages. There is no prejudice.

Third, Defendants objection as to the temporal nature of testimony offered is belied by the disclosure itself in that, on its face, all of the opinions are project-related—a project and claim based on the ongoing dispute between the parties, and their respective positions, as to how and why Plaintiff was owed (or not owed) anything. Defendants mistakenly focus their objection and the adequacy of their disclosure through the lens of *when* the opinions were arrived. It is clear from the opinions themselves that they are Project-based opinions, a project during which the dispute arose, the positions of the parties established, and Plaintiff's position since they were still on the job site is virtually unchanged.

Defendants misread the *Scholl* case as to their singular focus on the temporal[3] nature of the opinions where, as here, the substantive issues and subjects on which Plaintiff offers these employees as experts were the same subjects Plaintiff was hired by Defendants to perform—asbestos abatement, estimating, demolition, project management, etc. This is not a general practitioner treating back pain and also opining as to "causation" of an injury due to a rear end collision. The rebuttal disclosure of Plaintiff is no different merely because it was offered later in time, as it was offered later in time because Defendants had yet to disclose any experts (or even competent witnesses) that Plaintiff needed to rebut. Plaintiff's rebuttal disclosure is provided as Exhibit 7.

As to the value of the work Plaintiff seeks, Plaintiff provides Defendants information as to these opinions as to the timeframe in which the opinions were arrived.

---

[3] Defendants take the temporal argument to its extreme when they argue that because the opinions of Condon in Plaintiff's rebuttal disclosure were disclosed *after* Defendants made their claiming-party disclosures, that Condons opinions must have been "formed" in preparation of trial.

13

Plaintiff has disclosed that they are based on the, "Contractual agreements, including amendments and agreed upon changes to work between the parties." Exh. 1 p. 5, 7.

Defendants make a blanket argument in opposition to Mr. Condon's expert testimony that was disclosed in rebuttal (Exh. 7), making the same argument as with similar opinions offered in the initial disclosures including Mr. Matsuo. Defendants argue that Mr. Condon's testimony, offered by Plaintiff here, regarding "the customs, practices, and usages in the asbestos abatement industry is to rely on the [survey] report as to those quantiles [of asbestos]" are opinions that are "not expert testimony." In the case of Mr. Condon's rebuttal disclosure, however, Defendants' argument is even more exposed as this expert testimony is specifically offered in rebuttal to expert testimony Defendants have disclosed on the exact same point whether and an asbestos abatement subcontractor should use or rely upon a survey in the bidding process. See, above. Embodying the very definition of rebuttal expert testimony, Mr. Condon's project-related opinions are offered "solely to contradict to rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)" per Rule 26(a)(2)(D)(ii). Like the Defendants' arguments that Mr. Matsuo's opinions ought to be rejected because they have to do with contracting, so should Defendants arguments as to Mr. Condon.

**C. Witnesses Samuels and Troyer.**

As set forth in Defendants' Motion at p.12, Defendants "retained Ms. Samuels, and her company, Scheduling Consultants, Ltd. to provide scheduling services on the Project." Plaintiff agrees that it would limit the testimony to that which is disclosed by Defendants—the "scheduling services" that Ms. Samuels, and her company provided on

the Project. As set forth in Defendants Motion at p.14, Defendants, "retained Mr. Troyer, and his former employer Walsh Environmental, to perform asbestos surveys, abatement design, and air monitoring services on the Project." Plaintiff agrees that it would limit the testimony to that which is disclosed by Defendants—the "asbestos survey, abatement design, and air monitoring services" that Mr. Troyer, and his former employer, performed on the Project.

The purpose of expert disclosures is "to eliminate surprise and provide opposing counsel with enough information ... to prepare efficiently for deposition, any pretrial motions and trial." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1121-22 (D. Colo. 2006). Here, Plaintiff acknowledged in a supplemental disclosure that it intended to call these witnesses to present facts that were in rebuttal to Defendants' expert disclosures.

Defendants are aware of what, exactly, they retained each of these witnesses and their companies for, and the duties each of them preformed on the Project. Defendants' Motion itself actually provides more detail than Defendants' initial disclosures on the subjects of these individuals' and companies' knowledge. As to Scheduling Consultants, Defendants merely disclosed "Scheduling Consultants, Ltd. provided scheduling services to Matsuo Engineering Centerre Construction, A Joint Venture and Centerre on this Project." Exhibit 8 at p. 3. As to Walsh, Defendants merely disclosed, "Walsh's efforts among other things included abatement monitoring, inspections and reporting." *Id.*

Defendants are not prejudiced by Plaintiff calling a representative of Walsh at trial. Defendants' Project Manager Jesse Steinert, for example, testified at length in his

15

December 10, 2014 deposition as to the scope of work Walsh was retained by Defendants to provide on the Project. *See, e.g.*, Steinert Deposition at 19:21 – 20: 20, Exhibit 9. Mr. Steinert testified regarding the quantiles of asbestos that Walsh provided in its survey, which was then provided to Plaintiff to bid on the project stating,

> They [Walsh] provided an estimate of quantities [of asbestos]. We would have liked to have a more definitive number of each different type of ACM that was present onsite, but they did provide an estimate to the best of their knowledge based on review of previous documents and the limited survey they were able to perform.

*Id.* Steinert Deposition at 24:13-17 (emphasis added).

Defendants later retained expert Mr. Johnson, offered on January 15, 2015, as to opinions that Plaintiff "is expected to be knowledgeable and aware of the potential for investigation and sampling errors or limitations" of Walsh's report. Exh. 5 at 9. Based on the expert testimony Defendants offer now, and the detailed deposition testimony of Mr. Steinert regarding nature of Defendants' asbestos survey provide to have been produced—by Walsh—to the "best of their knowledge," prohibiting Plaintiff from calling a representative of the same company as a "fact" witness is simply not justified. Defendants are not prejudiced and do not argue how they would be prejudiced if Plaintiff called a representative from Walsh as a fact witness, a company Defendants disclosed in their initial disclosures (as did Plaintiff), who Defendants are intimately aware, and Defendants' project manager has testified the survey Walsh prepared, and on which Mr. Johnson opines, was based on "the best of their knowledge." Preclusion of a "fact" witness because the fact witness might impeach Defendants' expert and lay witnesses is not unfairly prejudicial nor could any sanctions be warranted under a

16

circumstance where Plaintiff made no failure of disclosure, and Defendants face no *undue* prejudice at all.

As to Ms. Samuels testimony, Scheduling Consultants, like Walsh, was Defendants contractor that Defendants identified in their initial disclosures. On January 15, 2015, Defendants disclose an expert report on scheduling (Exh. 4, Ms. McGouty) that failed to address numerous schedules that Ms. Samuels and her company—Scheduling Consultants—produced. Prior to that date Plaintiff had no independent basis to call Scheduling Consultants on its own. Defendants are not prejudiced in any unfair fashion if Plaintiffs to called Ms. Samuels, Defendants contractor, to testify as to facts (not opinions) in this case including laying foundation for documentary evidence (including schedules) Defendants did not provide their expert in preparation of her report. Prior to January 15, 2015 Plaintiff had no prior knowledge that Defendants would produce an expert in this case that failed to address, *inter alia*, Defendants' own amended schedules. Defendants seeking to limit fact witness testimony known to Defendants simply because it might tend to impeach their newly disclosed experts is unwarranted where Plaintiff's actions in having not previously disclosed a witness known to Defendants was substantially justified.

### IV. CONCLUSION.

For all the reasons set forth above, Defendants' motion should be denied.

DATED this 24th day of March, 2015.

                                                         Respectfully Submitted,

                                                         _____

    s/Reed F. Morris
Reed F. Morris
Craig T. Watrous
Mallon Lonnquist Morris & Watrous, PLLC
3200 Cherry Creek South Drive
Denver, Colorado 80209
Tel: 303-927-0011

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2015, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY** was filed with the Clerk of the U.S. District Court for the District of Colorado using the CM/ECF system, and served upon the following Parties' email addresses:

| | |
|---|---|
| Edward T. DeLisle, Esquire<br>E-mail: edelisle@cohenseglias.com | J. Douglas Scherling, Esq.<br>E-mail: JDScherling@gmail.com |

Attorneys for Defendants:
Centerre Construction, Inc.
Matsuo Engineering, LLC
Matsuo Engineering Centerre Construction A Joint Venture
Matsuo-Centerre A Joint Venture, LLC,
Berkley Regional Insurance Company
Matsuo Engineering Centerre Construction A Joint Venture, LLC

    s/Reed F. Morris