**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00087-CMA-KMT

UNITED STATES OF AMERICA, for the use and benefit of HUDSPETH & ASSOCIATES, INC., a Colorado corporation,

    Plaintiffs,

vs.

CENTERRE CONSTRUCTION, a Colorado Corporation
MATSUO ENGINEERING, LLC, a Colorado Limited Liability Company
MATSUO ENGINEERING CENTERRE CONSTRUCTION, a Joint Venture
MATSUO-CENTERRE A JOINT VENTURE, LLC, a Colorado Limited Liability Company
BERKLEY REGIONAL INSURANCE COMPANY, a Delaware corporation,
MATSUO ENGINEERING CENTERRE CONSTRUCTION A JOINT VENTURE, LLC, a Colorado Limited Liability Company

    Defendants And Third-Party Plaintiffs,

Vs.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Company

    Third-Party Defendant.

_____

### RULE 26(a)(2)(C) EXPERT WITNESS DISCLOSURES
_____

Hudspeth & Associates ("Hudspeth") and Fidelity and Deposit Company of Maryland ("Fidelity"), by and through counsel, hereby makes their disclosure of expert witness testimony pursuant to Fed. R. Civ. P. 26(a)(2)(C) as follows:

1) **Allan Matsuo**
   Matsuo Engineering, LLC
   c/o Edward T. DeLisle, Cohen Seglias

**Subjects of Testimony**: General Construction Contracting

1

**Summary of Opinions**:

A. That it is reasonable in the context of contract negotiations to ask that a contracting party provide specific references to paragraphs or clauses that support its interpretation of the contract. (Matsuo Deposition p. 61).

B. That it is reasonable to expect a contracting party to explain how it is interpreting the contract. (Matsuo Deposition p. 61-62).

C. That a general contractor has a duty to convey its position on the contract when asked. (Matsuo Deposition p. 62).

D. That it is reasonable for a subcontractor to expect the general contractor would convey interpretation of the contract. (Matsuo Deposition p. 62-3).

E. That it is reasonable for a subcontractor to request a general contractor to point to specific provisions in the contract under which the subcontractor is expected to perform work. (Matsuo Deposition p. 63).

F. That it is reasonable for subcontractor to rely on the general contractor's past interpretation of the contract as to how the general contractor will continue to interpret the contract in the future. (Matsuo Deposition p. 63-64).

G. When as contractor is bidding a job there is no requirement that it make assumptions as to worst-case scenario(s). (Matsuo Deposition p. 89).

H. When a contractor encounters site conditions that differ significantly from what were anticipated when the contract was entered, it is reasonable for the contractor to seek additional compensation for accomplishing additional work not included in the original scope of the contract. (Matsuo Deposition p. 89-90).

I. That the abatement subcontractor (Hudspeth) should have been notified of and provided a copy of the August 16, 2013 letter from GSA to MC denying MC's request for payment for additional ACM quantities on the second floor of the New Customs House. (Matsuo Deposition p. 108-109).

**Summary of Facts**:

A. That MC requested that the GSA point to specific provisions in the prime contract during negotiations so that MC could know the GSA's position and MC could evaluate its risk;

B. That MC believed that the prior conduct of GSA under the prime contract demonstrated an interpretation of the contract to which MC could rely on and that GSA would maintain the same position in the future (i.e. "precedent" that GSA had previously considered and agreed that additional ACM was a change order).

C. That MC believed it was reasonable to rely on GSA's previous position that GSA would consider additional ACM for a change order based on GSA's past interpretation and actions under the prime contract.

D. That MC changed its position as to payment to Hudspeth regarding whether Hudspeth would get paid relative to MC getting paid from GSA

E. That MC requested payment from GSA for additional quantities of ACM.

F. That MC notified GSA of additional ACM located on the second floor and MC requested payment from GSA for additional quantities of ACM for the second floor of the New Customs House prior to abatement proceeding.

G. That MC received notification from GSA that MC's request for payment for additional quantities on the second floor had been denied.

H. That MC failed to notify or provide Hudspeth with GSA's notification that it would not pay for the additional ACM located on the second floor.

I. That MC continued to demand that Hudspeth complete work removing ACM on the second floor after being notified by GSA that GSA would not pay for such work.

**2) Dan Moss**
Project Manager
Hudspeth & Associates, Inc.
c/o Reed F. Morris, MLMW

**Subjects of Testimony**:   Asbestos Abatement
Select Demolition
Asbestos Abatement and Select Demolition Project Oversight

**Summary of Opinions**:

A. Methods and progression employed on the New Customs House project, and that such methods were proper:

  a. For proper remove trace plaster, including in "clean demo" and "OSHA removal" of plaster in containment;

  b. For containment set up, modification and repair necessary for plaster and for abatement of ACM;

  c. For worker process for entering and performing work within containment;

  d. For active removal and disposal of asbestos containing material by type including pipe insulation, pipe sealant, pipe fittings, duct sealant, rectangular duct, caulking, and floor tile.

  e. For ongoing work including inspections, air monitoring, and clearances in conjunction with Walsh.

  f. For teardown and disposal.

B. That such methods employed were proper under applicable regulations, industry standards, and the contract.

C. That such amounts sought in this case (See Deposition Exhibit 128), and which Plaintiff is contractually entitled to, are the reasonable value for the work and services performed by Hudspeth, and which amounts Defendants benefited, based on factors including:

  a. Contractual agreements, including amendments and agreed upon changes to work between the parties;

  b. Amounts paid in this matter to other vendors (i.e., LVI) for like work and associated documentation including contracts, unit rates and scope;

  c. Industry experience for like work in the same geographic location;

**Summary of Facts**:

A. Description of the change order process involving Walsh, at the direction of MC/Centerre;

B. The methods employed to remove asbestos containing material at the project;

C. The methods employed and transition to remove trace plaster as result of NEA (negative exposure assessment) in containment.

3) **Chris Condon**
Project Manager
Hudspeth & Associates, Inc.
c/o Reed F. Morris, MLMW

**Subjects of Testimony**: General Construction Contracting
           Asbestos Abatement Contracting

5

>Asbestos Abatement
>Demolition Contracting
>Demolition
>Project Management
>Estimating

**Summary of Opinions**:

A. Methods and progression employed on the New Customs House project, and that such methods were proper:

   a. For proper remove trace plaster, including in "clean demo" and "OSHA removal" of plaster in containment;

   b. For containment set up, modification and repair necessary for plaster and for abatement of ACM;

   c. For worker process for entering and performing work within containment;

   d. For active removal and disposal of asbestos containing material by type including pipe insulation, pipe sealant, pipe fittings, duct sealant, rectangular duct, caulking, and floor tile.

   e. For ongoing work including inspections, air monitoring, and clearances in conjunction with Walsh.

   f. For teardown and disposal.

B. That such methods employed were proper under applicable regulations, industry standards, and the contract.

C. That the customs, practices, and usage in the asbestos abatement industry of third-party industrial hygienist prepared survey reports (such as, in this case, those prepared Walsh) are to identify quantify locations of ACM, and to be relied upon, in significant part, as a basis for preparation the abatement contractor's

6

    bid.  For contractual provisions related to quantities of asbestos containing material and types to be removed, the customs, practices, and usage in the asbestos abatement industry is to rely on the report as to those quantities. That industrial hygienist prepared survey reports purporting to have identified known quantities of ACM at a site do not omit known quantities of ACM without mention or qualification, such as the position MC/Centerre is taking in this case here.

D. That such amounts sought in this case (See Deposition Exhibit 128), and which Plaintiff is contractually entitled to, are the reasonable value for the work and services performed by Hudspeth, and which amounts Defendants benefited, based on factors including:

    a. Contractual agreements, including amendments and agreed upon changes to work between the parties;

    b. Amounts paid in this matter to other vendors (i.e., LVI) for like work and associated documentation including contracts, unit rates and scope;

    c. Industry experience for like work in the same geographic location;

**Summary of Facts**:

A. Description of the change order process involving Walsh, at the direction of MC/Centerre;

B. The methods employed to remove asbestos containing material at the project;

C. The methods employed and transition to remove trace plaster as result of NEA (negative exposure assessment) in containment.

4) **Hudspeth reserves its right to call as an expert witness in this matter any expert witness listed or designated by any other party in this case even if such witness is later withdrawn.**

Hudspeth and Fidelity reserve their rights to amend these disclosures and have experts review additional documents and depositions as they are made available during discovery or disclosure in this case which may generate additional expert opinion testimony.

By making the above set forth disclosures, Hudspeth and Fidelity in no way admit or take a positon as to whether the opinions expressed above are, in fact, expert opinions subject to Rules 702, 703 or 704. These disclosures are made without prejudice to seek admission at trial of additional testimony and evidence from the above listed witnesses or other witnesses consistent with the Rules.

DATED this 16th day of January, 2015.

Respectfully Submitted,

*/s/ Reed F. Morris*
Reed F. Morris

James C. Mallon
Craig T. Watrous
Mallon Lonnquist Morris & Watrous, PLLC
3200 Cherry Creek South Drive
Denver, Colorado 80209
Tel: 303-927-0011

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2015, I served the foregoing **RULE 26(a)(2)(C) EXPERT WITNESS DISCLOSURES** to the following Parties' email addresses:

Edward T. DeLisle, Esquire
E-mail: edelisle@cohenseglias.com

J. Douglas Scherling, Esq.
E-mail: JDScherling@gmail.com

Attorneys for Defendants:
Centerre Construction, Inc.
Matsuo Engineering, LLC
Matsuo Engineering Centerre Construction A Joint Venture
Matsuo-Centerre A Joint Venture, LLC,
Berkley Regional Insurance Company
Matsuo Engineering Centerre Construction A Joint Venture, LLC

s/Reed F. Morris