**EXHIBIT 2**

Case 1:14-cv-00087-CMA-KMT   Document 71-2   Filed 03/24/15   USDC Colorado   Page 2 of 3

U.S.A., et al. v. Centerre Construction, et al.     ALLAN MATSUO                                    11/14/2014

105

1  facilitating between Centerre and Hudspeth, he's
2  referring to it as MC here.
3       Q.  (BY MR. MORRIS)  Okay.
4       A.  There is no contractual relationship
5  between the joint venture and Hudspeth.
6       Q.  Well, let's go back to Exhibit 59.  This
7  is the June 14 letter.  This is from Mark Euwema.
8  What letterhead is this written on?
9       A.  It's on the joint venture letterhead.
10      Q.  Is that improper for Mr. Euwema to be
11 communicating on the joint venture letterhead?
12      A.  With the GSA?
13      Q.  Yeah.
14      A.  I don't know if it was improper.  It's --
15 the joint venture is non-populated, so there are no
16 employees of the joint venture.
17      Q.  Well, Mr. Euwema -- well, let's go back
18 to Exhibit 60, then.  Why does Mr. Euwema -- how does
19 he put the footer on his e-mail address?
20      A.  He has it as Matsuo-Centerre.
21      Q.  Do you understand him to be the project
22 manager for Matsuo-Centerre?
23      A.  For Matsuo Engineering under
24 Matsuo-Centerre, yes.
25      Q.  So you're saying it's a mistake for

106

1  Mr. Euwema to have been directing Hudspeth as MC in
2  this e-mail that's Exhibit 60?
3       A.  He's -- again, MC doesn't have any
4  employees.  Nobody is an employee of MC.  He's working
5  on behalf of the joint venture through Matsuo
6  Engineering.
7       Q.  Okay.  Then maybe I misunderstood.  What
8  did you think was either improper or a typo or
9  anything else?
10      A.  Like I said, his comment here that MC has
11 been paying Hudspeth.
12      Q.  Yeah.  That's a mistake.  Is that your
13 opinion?
14      A.  It's not technically accurate, I would
15 say.  I would say it is -- MC, the joint venture, pays
16 Centerre Construction and Centerre Construction would,
17 in turn, pay Hudspeth.
18      Q.  Let's look at Exhibit 59.  This is a
19 letter from Mark Euwema to the GSA on Matsuo-Centerre
20 letterhead, correct?
21      A.  Yes.
22      Q.  It says, "Due to the frustration (and
23 economic hardship on MC and its subcontractors) in
24 resolving matters associated with the additional
25 ACM."

107

1       Do you find a problem with what I just
2  read to you on Exhibit 59?
3            MR. SCHERLING:  Form.
4       A.  In that case, no.  There is -- I
5  guess technically there is no hardship on the joint
6  venture because it's passed through to the
7  subcontractors, in this case Matsuo Engineering and
8  Centerre Construction.
9            (Deposition Exhibit 61 was marked.)
10      Q.  I'm handing you what's been marked 61.
11 Do you recognize this document?
12      A.  I'm familiar with it, yes.
13      Q.  What is it?
14      A.  It is an accounting between the reported
15 ACM amounts and in this case actually the estimated
16 amounts of ACM on the second floor.
17      Q.  Requesting the GSA to recognize the
18 differing site condition regarding additional ACM on
19 the second floor?
20      A.  Correct.
21      Q.  I'm handing you Exhibit 62.
22           (Deposition Exhibit 62 was marked.)
23      Q.  This is a letter to you, or appears to be
24 a letter to you.  Do you recognize this document?
25      A.  Yes.

108

1       Q.  Did you receive this letter?
2       A.  I believe so.
3       Q.  Does Exhibit 62 appear to be a response
4  to the letter that is Exhibit 61, the August 8 letter?
5       A.  It does, yes.
6       ==Q.  And what is GSA conveying in this
7  Exhibit 62?==
8       ==A.  They are saying that the request for
9  adjustment is denied and that they deem the ACM noted
10 in the letter as included in the base contract.==
11      ==Q.  So at this point in time, I would like
12 you to look at all three:  Exhibits 60, 61 and 62.
13 Okay?  In Exhibit 60, MC is telling Hudspeth that it
14 can no longer sustain paying Hudspeth and can only pay
15 when GSA has been paid by -- sorry -- "MC can only pay
16 when we have been paid by GSA."  Correct?==
17      ==A.  Yes.==
18      ==Q.  In Exhibit 61, MC is seeking payment for
19 additional ACM on the second floor from GSA, correct?==
20      ==A.  Yes.==
21      ==Q.  And then in Exhibit 62, GSA is denying
22 that request for payment for additional ACM on the
23 second floor, correct?==
24      ==A.  Yes.==
25      ==Q.  Should MC have given this August 16==

Case 1:14-cv-00087-CMA-KMT   Document 71-2   Filed 03/24/15   USDC Colorado   Page 3 of 3

U.S.A., et al. v. Centerre Construction, et al.   ALLAN MATSUO                                       11/14/2014

109

1  letter to its abatement contractor, given the
2  communications that it gave the abatement contractor
3  in Exhibit 60?
4           MR. SCHERLING:  Form.
5       A.  It appears that it should have been
6  passed on.
7           MR. MORRIS:  I've got no further
8  questions.  It's 1:14.  Mr. Scherling may have a
9  couple of other questions for you.
10          MR. SCHERLING:  I have a couple of
11 follow-ups.
12               EXAMINATION
13 BY MR. SCHERLING:
14      Q.  Mr. Matsuo, I wanted to just clear up a
15 couple things that may have been unclear.  Josh
16 Schomer has worked for Matsuo Engineering how long?
17      A.  He's been employed continuously from
18 April of 2005 to the present.
19      Q.  Can you describe for me what you mean by
20 direct supervision?
21      A.  I would say direct supervision would
22 apply to an employee -- a nonprofessional employee,
23 more of an hourly position where they are given tasks
24 and -- smaller tasks, and when each task is completed,
25 checked before the next assignment is made.

110

1       Q.  You've made a distinction between a
2  professional employee and a nonprofessional employee.
3  Would you explain the difference between those two
4  types of employees?
5       A.  Again, I would consider a nonprofessional
6  employee more akin to an hourly worker where they are
7  given direction of the task at hand, how to perform
8  that task, perhaps what tools to use, what methods and
9  given a set time to do those tasks.
10          A professional employee would be more of
11 someone that I can assign a larger task for a whole
12 project and with general updates through the project
13 and final check-in with no direct daily supervision.
14      Q.  Did Mark Euwema report directly to you on
15 this New Customs House project?
16      A.  As far as --
17      Q.  As far as being your professional
18 employee.
19      A.  Yes, he was an employee of Matsuo
20 Engineering.
21          MR. SCHERLING:  Nothing further.
22          MR. MORRIS:  Nothing further for me.
23          WHEREUPON, the within proceedings were
24 concluded at the approximate hour of 1:18 p.m. on the
25 14th day of November, 2014.

111

I, ALLAN MATSUO, do hereby certify that I
have read the above and foregoing deposition and that
the same is a true and accurate transcription of my
testimony, except for attached amendments, if any.
        Amendments attached   (  ) Yes    (  ) No


                        _____
                        ALLAN MATSUO



         The signature above of ALLAN MATSUO
was subscribed and sworn to before me in the county of
_____, state of Colorado, this _____ day of
_____, 2014.



                        _____
                        Notary Publi c
                        My commission expires



United States of America 11/14/14 (mh)

112

                REPORTER'S CERTIFICATE
STATE OF COLORADO          )
                           ) ss.
CITY AND COUNTY OF DENVER  )
        I, MARCHELLE HARTWIG, Certified Shorthand
Reporter and Notary Public, ID 20014012312, State of
Colorado, do hereby certify that previous to the
commencement of the examination, the said
ALLAN MATSUO was duly sworn by me to testify to the
truth in relation to the matters in controversy
between the parties hereto; that the said deposition
was taken in machine shorthand by me at the time and
place aforesaid and was thereafter reduced to
typewritten form; that the foregoing is a true
transcript of the questions asked, testimony given,
and proceedings had.

        I further certify that I am not employed by,
related to, nor of counsel for any of the parties
herein, nor otherwise interested in the outcome of
this litigation.
        IN WITNESS WHEREOF, I have affixed my
signature this 24th day of November, 2014.

        My commission expires April 19, 2017.

___X__ Reading and Signing was requested.
_____ Reading and Signing was waived.
_____ Reading and Signing is not required.