**EXHIBIT 4**

# ENHANCEMENT ENGINEERING
**CPM Scheduling and Professional Opinion**

| | |
|---|---:|
| 2952 S. Fillmore Way | (303) 691-2069 |
| Denver, Colorado 80210 | Susan_McGourty@msn.com |

## Schedule Opinion Regarding Hudspeth & Associates at the New Custom House Federal Office Building Modernization

Date:   January 15, 2015

### 1. Purpose

I was asked by Centerre Construction, Inc. to review the impact to the Project due to H&A's failure to complete its work in a timely manner.

Documents used in preparation of this report are described in Attachment C. The opinion presented in this report is based on my review of the referenced documents. If other information is provided to me during the course of discovery, then I may supplement this report and provide additional opinions.

### 2. Introduction

The New Custom House Federal Office Building Modernization Project (to be referred to as "the Project") is a design/build interior remodel of the historic building located in downtown Denver. The Project, was awarded to Matsuo Engineering Centerre Construction a Joint Venture (to be referred to as the "Contractor" or "MC") on March 19, 2010 with Notice To Proceed with Design dated May 10, 2010. The Owner's representative is the US General Services Administration (GSA).

The Project consists of energy, security, and convenience upgrades to this existing marble clad structure with approximately 278,252 gross square feet and 172,502 usable square feet on a 2.4 acre site.  The building consists of 5 floors above grade plus 2.5 basement and sub-basement levels below grade. The building is mostly office space with a child care center and food service area. Modernization includes replacement windows (blast), updated mechanical and plumbing systems, updated temperature control systems, and updated lighting control systems. Replacement of mechanical, electrical, and plumbing systems is followed by repair or replacement of wall, ceiling, and floor surfaces.  All areas of the building contain asbestos and/or lead based paint hazardous materials that require specialized abatement and demolition.

The Project was partially occupied for the duration of construction. Tenants were first moved out of the 2nd floor so that this floor could be used as a "swing space" for subsequent construction. Phase 1 construction at the 4th and 5th floors began when tenants were moved out of the 4th and 5th floor to the 2nd floor. Tenants then move into the completed 4th and 5th floors to allow Phase 2 construction at the 3rd floor. Tenants move into the completed 3rd floor to allow Phase 3 construction at the 1st floor. Child Care Center construction in the basement occurs with Phase 3 1st floor construction. Tenants move into the completed 1st floor and basement to allow Phase 4 construction at the 2nd floor.

### 3. Initial CPM Schedule

The schedule breaks the work down into general design and construction tasks. Design was completed when the initial schedule was available. Only the construction is included in this schedule evaluation. The schedule breaks the building down into floors Basement through 5th. Each floor is broken down into three sections labeled A, B, and C. Area A is the West Wing. Area B is the South Wing. Area C is the East Wing. Window activities are broken down into areas A through K.

Interior demolition and hazardous material abatement is a critical path activity since no work at the interior of the structure can be started until it is complete. Hudspeth & Associates, Inc. (to be referred to as the "Subcontractor" or "H&A") was awarded the demolition and hazardous material abatement scope of work in a Subcontract Agreement dated August 24, 2011 and signed by H&A on August 29, 2011.

H&A received the initial schedule (September 7, 2011 data date) on September 21, 2011. This initial schedule is referenced in the H&A Subcontract Agreement. No evidence of H&A disagreement with the required abatement and demolition activities included in the initial schedule was found in the reviewed documents. It is therefor assumed that H&A agreed with the initial schedule description of their scope of work.

The initial schedule required H&A abatement and demolition to begin at Phase 1 (4th and 5th floor) on September 8, 2011 and be complete with the Phase 4 (2nd floor) on May 14, 2013.

### 4. Unforeseen Additional Asbestos

Additional unforeseen asbestos containing materials (ACM) were discovered beginning at the 4th floor and continuing through all remaining areas of the Project. This increase in scope of work would be expected to extend the required duration where it was encountered.

Correspondence begins with H&A Change Order Request 377-12, dated December 28, 2011, which was near the completion of the 4th floor demolition and abatement, concerning 5180 lf of additional unforeseen asbestos pipe insulation.

The fact that additional unforeseen asbestos was discovered in a building of this age with few mechanical upgrades, is not unusual, especially considering the initial surveys were required to complete without removing significant finishes in an occupied building. H&A was required by Contract to notify MC prior to removing the additional unforeseen ACM so that

its presence could be verified.  Notification on the 4th floor did not occur until most of the unforeseen material had been removed.

There is agreement that additional unforeseen ACM pipe insulation was removed.  There is a dispute regarding quantity of added material and the cost for the additional removal.

Credit has been given to the duration overage for H&A demolition and abatement activities at the 3rd, 1st, and basement levels for additional unforeseen ACM as described later in this document.

**5. Actual Schedule Performance vs. Subcontract Requirement**

The Contractor completed monthly schedule updates that were submitted to GSA to justify payment applications. Actual dates were obtained from the schedule update with a June 1, 2014 data date.  This update was  prepared near the end of the project so it represents an As Built Schedule.

Walsh Environmental Scientists and Engineers, LLC (Walsh) was contracted by MC to conduct the air testing and inspection required to indicate that all hazardous materials have been abated in an area and that it is now safe to occupy.  Activities for this final clearance sign off is included in the schedule in each area as "FINAL CLEAN DEMOLITION".  This is the activity that indicates H&A is finished with their work on a particular  floor area not including window demolition and lead abatement.

H&A initial submittals and initial procurement were on time or earlier than required. Abatement started at the 4th and 5th floor as required on September 8, 2011.  Some basement abatement was completed months earlier than required by the initial schedule.  Abatement at the 2nd floor Telecom Room was completed months before the rest of the 2nd floor was available for demolition and abatement.  This would benefit H&A by reducing the quantity of basement work required to complete during Phase 3 and at the 2nd floor Phase 4 construction.  In general, execution of the interior demolition and abatement exceeded the required duration by a substantial period of time beginning at the 4th floor. Email and weekly meeting minutes indicate that MC was notifying H&A of delay due to missed finish dates from the beginning of H&A's presence on site. H&A appears to have attended the weekly meetings.

Attachment A compares the date that each H&A activity actually started and finished with the dates each activity was planned to start and finish on the initial schedule referenced in the H&A subcontract agreement. The blue bar shows the actual dates for each activity.  The pink bar shows the dates the initial schedule required each activity to be completed to avoid delay.  This attachment also notes the variance from the planned finish date and the variance from the planned duration to demonstrate the delay in execution of the demolition and abatement work.

Window removal and replacement is important but it doesn't have the same impact on the overall project as delayed completion of the interior floor demolition. The interior floor demolition has to be completed before <u>any</u> of the follow-on mechanical, plumbing, or

electrical trades can start their interior rough in at each area. This causes each of the floor area demolition and abatement activities to be on the critical path for the initial baseline schedule and every update. A delay in a critical path activity will translate to a delay in the overall project completion date. Attachment B has been provided to demonstrate H&A performance at the floor demolition and abatement not including windows.

Note the following comparison of planned vs. actual duration for abatement and demolition work at the 4th floor.



The blue bar is the actual duration for each activity. The pink bar is the planned duration shown on the initial CPM schedule. The planned duration was 28 working days. The actual duration was 83 working days. Each area was planned to complete in a staggered fashion to allow follow on rough in at Area A to begin as soon as possible. H&A actually completed the entire floor on the same date which prevented follow on subcontractors from getting an earlier start at Area A.

H&A started the demolition and abatement at the 4th floor on time. Area A was required to finish by October 6, 2011. Area A actually finished January 13, 2012. This represents a delay of 99 calendar days that will transfer directly to the overall project completion date unless the Contractor mitigates part of the impact by accelerating follow on scopes of work.

Review of Walsh Containment Clearance Logs indicates that H&A was having a difficult time obtaining the required clearances at the 4th floor. Failed clearances are the likely cause for all 3 areas at the 4th floor being cleared at one time instead of in a staggered sequence.

As noted previously, H&A encountered unforeseen ACM at the 4th floor which was included in H&A Change Order Request 377-12 dated December 28, 2011. This notification indicates that H&A removed 5180 lf of ACM pipe insulation in addition to the 2061 lf that was expected on the 4th floor. The Walsh Containment Clearance Logs indicate that Walsh observed a total of 3287 lf of ACM pipe insulation removal at the 4th floor and most of this had already been removed before H&A submitted their notice of unforeseen quantity on December 28, 2011. The Project Specifications require H&A to notify MC of the additional ACM before it was removed so that it could be verified and quantified. H&A failed to provide the required notice in a timely manner. This is also the beginning of an ongoing dispute between MC and H&A regarding the quantity of additional ACM pipe insulation and the cost required to complete the added scope of work.

Based on H&A's failure to timely notify the Contractor of the unforeseen ACM on the 4th

floor and due to the failure of H&A clearance testing, H&A is responsible for 99 calendar days of delay at the 4th floor demolition and abatement activities.

As the 4th floor demolition and abatement completed with a significant delay, each subsequent floor would have a delayed start date. Consequently, comparison of actual to planned finish dates for each H&A activity at floors 3, 1, and basement are less meaningful than the 4th floor delay to completion.

Actual vs. planned for the 3rd floor:



Actual duration for the 3rd floor was 51 working days. Required duration was 29 working days. This results in a delay to the project of an additional 31 calendar days (22 working days). It is likely that this delay is partially due to the unforeseen ACM encountered on this floor. 1453 lf of ACM pipe insulation was expected at this floor and Walsh indicates that 1607 lf of ACM pipe insulation was removed. Abatement of the added ACM was expected to take 1 additional working day to complete based on planned production rates. As soon as additional ACM quantity was discovered, it would take 1 day per area x 3 areas at the 3rd floor to quantify and verify before abatement could proceed. This equals 3 days additional time at the 3rd floor. Total delay due to unforeseen ACM is 4 working days (6 calendar days). The remaining 25 calendar days of delay are H&A responsibility.

Actual vs. planned for the 1st floor:

Actual duration for the floor was 83 working days. Required duration was 22 working days. This results in a delay to the project of 85 calendar days.

It is likely that this delay is partially due to the unforeseen ACM encountered on this floor. 4613 lf of ACM (pipe fittings are assumed to be 1 lf/ea) was expected at this floor and Walsh indicates that 15167 lf of ACM (pipe fittings are assumed to be 1 lf/ea) was removed. Using

the productivity rate included in the initial schedule, abatement of the added ACM was expected to take 51 additional working days to complete. As soon as this amount of additional ACM was discovered, it would take an additional 2 working days per area x 4 areas on the 1st floor to quantify and verify before abatement could proceed in each area (8 working days). Total delay due to unforeseen ACM is 59 working days (83 calendar days). H&A is responsible for 2 calendar days of delay at the 1st floor.

Actual vs. planned for the basement:



Actual duration for the largest area of this floor was 98 working days. Required duration was 31 working days. This results in a delay to the project of 94 calendar days.

The first floor and the basement were planned to be executed concurrently. It appears that the 1st floor construction completion was the driver for the release of the 2nd floor (Phase 4). Consequently, the delay at the basement is not considered in this analysis because it was not a critical path area.

Overall delay to the project due to longer than required durations for demolition and abatement at each floor will be cumulative since each phase (floor) has to complete before the next phase can begin. Overall delay only because of extended demolition and abatement duration is expected to be (99 + 25 + 2) = 126 calendar days, or approximately 4.1 months.

## 6. Hudspeth & Associates Abandons the Project

In early August 2013, H&A stopped providing manpower to the project. Correspondence at this time indicates that H&A abandoned the project due to disputed payment for unforeseen additional asbestos abatement. Contractor response referenced the subcontract provision that MC would pay H&A when it received payment from GSA. Since the alleged changed work had not been incorporated into an approved change order, MC was unable to bill or receive payment from GSA for the disputed change.

H&A continued to abandon the jobsite until MC notified H&A they were hiring a replacement subcontractor on August 23, 2013. At this time abatement and demolition was complete at the 5th, 4th, 3rd, 1st, and most of the basement. Level 2 (Phase 4) was available to H&A on July 31, 2013. It appears that H&A began some preliminary initial cleaning but did not complete any significant demolition or abatement at the 2nd floor. For the purposes of this evaluation, it appears that the 2nd floor demolition and abatement was performed by the replacement contractor after H&A abandoned the Project.

The 2nd floor was released for demolition and abatement on August 1, 2013. The replacement contractor began work at the 2nd floor on September 3, 2013.

The Project experienced a delay of 33 calendar days between August 1, 2013 and September 3, 2013 that was caused by H&A abandonment of the Project.

### 7. Costs due to H&A's Failure to Perform

H&A's failure to execute its work as required by the initial schedule that was referenced in the Subcontract Agreement caused MC to incur additional costs. Evaluation of the cost of delay is beyond the scope of work included in this opinion.

In general, costs that might be attributed to this delay would include:

- Extended General Conditions for the delay period
- Reimbursement of liquidated damages MC incurred due to late overall project completion
- Acceleration costs for follow-on subcontractors
- Productivity loss of successor subcontractors as succeeding work was stacked to help mitigate demolition and abatement impact
- Cost to complete H&A scope of work by the replacement subcontractor

### 8. Summary

H&A failed to perform on this Project as required by its Subcontract. Demolition and abatement has to be completed at each floor before any other work can occur in that space. This project breaks the floors down into 4 phases. One phase (floor) has to be completed and tenants moved in before the next phase can begin. Consequently interior floor demolition and abatement are critical path activities. Delays to critical path activities will delay the overall project completion date.

H&A received the initial schedule 23 calendar days after it executed its Subcontract Agreement and 13 calendar days after it started demolition on the project. H&A never disputed the durations or logic included in the initial schedule indicating its agreement with the schedule requirements.

Lead based paint abatement and window demolition activities also experienced significant increased durations. These areas are more easily isolated without impacting the entire floor so they have not been included in this evaluation.

Unforeseen asbestos was encountered during the demolition and abatement work at every floor. This issue was first documented at the 4th floor (Phase 1) but not at the time required by the Project Specifications. Subsequent floors had unforeseen asbestos that was also

documented. The 4th floor was also impacted by H&A failure to achieve clearances.

An ongoing dispute regarding quantity of unforeseen ACM began in January 2012. This dispute was compounded by GSA refusal to issue a change order compensating MC for the unforeseen ACM. MC could not bill for the ACM overage until a change order was issued. MC pays H&A when they get paid so no compensation for the unforeseen ACM actually removed from the building has been received. The 2nd floor was ready for demolition and abatement on August 1, 2013 but H&A never began significant work on the 2nd floor. H&A abandoned the jobsite in August 2013. A replacement demolition and abatement subcontractor mobilized and began work on September 3, 2013.

Duration delays at floors 1, 3, and 4 within H&A control is 126 calendar days. 102 calendar days have been allowed for removal of unforeseen ACM pipe insulation at the 3rd and 1st floor. An additional 33 calendar days of delay were experienced when H&A abandoned the Project and MC had to hire a replacement subcontractor. Total delay attributed to H&A is 159 calendar days.

By _____
Susan C. McGourty P.E.