**EXHIBIT 7**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00087-CMA-KMT

UNITED STATES OF AMERICA, for the use and benefit of HUDSPETH & ASSOCIATES, INC., a Colorado corporation,

      Plaintiffs,

vs.

CENTERRE CONSTRUCTION, a Colorado Corporation
MATSUO ENGINEERING, LLC, a Colorado Limited Liability Company
MATSUO ENGINEERING CENTERRE CONSTRUCTION, a Joint Venture
MATSUO-CENTERRE A JOINT VENTURE, LLC, a Colorado Limited Liability Company
BERKLEY REGIONAL INSURANCE COMPANY, a Delaware corporation,
MATSUO ENGINEERING CENTERRE CONSTRUCTION A JOINT VENTURE, LLC, a Colorado Limited Liability Company

      Defendants And Third-Party Plaintiffs,

Vs.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Company

      Third-Party Defendant.

_____

## RULE 26(a)(2)(C) REBUTTAL EXPERT WITNESS DISCLOSURES
_____

Hudspeth & Associates ("Hudspeth") and Fidelity and Deposit Company of Maryland ("Fidelity"), by and through counsel, hereby makes their disclosure of rebuttal expert witness testimony pursuant to Fed. R. Civ. P. 26(a)(2)(C) as follows:

Hudspeth and Fidelity state at the outset that several of the purported "opinions" of the experts Defendants ("MC") provide hearsay commentary and draw legal conclusions based on their interpretation of contract documents. For example, Expert McGoutry purports to "opine" that Hudspeth is not entitled to any additional

contract days for quantities removed with the sole basis being stated as "H&A's failure to timely notify the Contractor of unforeseen ACM on the 4th Floor and due to the failure of H&A clearance testing."  Neither the *legal* consequences any failure to notify nor the *causes or consequences* of clearance testing are expert opinions on which this witness is competent or capable to testify.  Other opinions offered by this expert have no factual basis.

Hudspeth and Fidelity specifically reserve the right to seek preclusion of any and all of the expert testimony disclosed by Defendants.  To the extent expert opinion is submitted and offered, Hudspeth and Fidelity provide the following in rebuttal:


**1) Chris Condon**
    Project Manager
    Hudspeth & Associates, Inc.
    c/o Reed F. Morris, MLMW

**Subjects of Testimony**:   General Construction Contracting
                            Asbestos Abatement Contracting
                            Asbestos Abatement
                            Demolition Contracting
                            Demolition
                            Project Management
                            Estimating

**Summary of Opinions**:

A. Impact of presence and methods of other subcontractors on the job site as to schedule, including disturbances contributing to clearance failures (particularly in Phase 1) and contractors marking up additional demo during abatement (particularly during Phase 2 and 3) due to NEA.

B. That additional asbestos was located outside of "existing containments" which would lead to increased containments and containment costs (including materials and labor).

C. That additional asbestos located within "existing containments" would also have additional containment costs (including materials and labor), for example, where an additional niche is discovered within a containment and the technical aspects of the niche itself needed to be contained.

D. That reconciliation processes, as largely done here, are at the time the work was performed or near the time the work was performed.  That retrospective "reconciliation" of issues years past, including issues that were negotiated and reconciled between the parties for months, is not common or typical in the industry—it is non-existent.  Here, MC actually attempted to have Hudspeth execute contract amendments allowing for revisiting prior amendments, also not common or typical practice in the industry.

E. That additional contract days were negotiated by the parties which is common in the industry; where, as here, they were requested and addressed in the change order process;

F. That additional revised schedules were issued on this project by MC and provided to Hudspeth;

G. That it was presented as an experienced and knowledgeable professional had conducted the survey; that the ability to "extrapolate" or bid based on risks and contingency costs would occur only in cases where the abatement contractor was negotiating a job with a client, and can and would extrapolate materials to

determine risk and add contingencies into the contract.  Where, as here, the project is presented as a quantities-based/lump sum bid, where the abatement contractors bid against each other on the same reports and plans, the concept of "extrapolation" or looking at worst case scenarios would not be present.  It is not the duty of a subcontractor to bid the worst case scenario.

H. That supply pipes are not necessarily located in the same location as return pipes.

I. That the location and quantity of materials presented in the project was significantly different from that presented in the materials or in the walk through.

J. That the contract was clearly a units/survey based bid is equal explanation as to why there would be no questions regarding the scope from bidders.

K. The demolition included in the unit rate brake down was performed to access the ACM and not part of the demolition scope of work.  In most cases the demolition that Hudspeth performed was either not scheduled or it was on other sub-contractors (e.g., mechanical, plumber, or electrician); demo on niches might have been charged for "be-backs."

L. Even if additional pipes were found within "existing" containments, there are additional materials, additional pre-cleaning, increased labor, and increased materials for activities associated with the additional ACM including disposal, containment modification and construction.

M. Additional containments that were constructed for increased ACM and/or OSHA demolition are not accounted for in any computation of rate articulated by MC or its experts.

N. That it was reasonable given the parties position for Hudspeth to require detail, instruction and positon of MC which MC refused to provided.  It is now known that MC was concealing material information from Hudspeth. Any characterization of Hudspeth's conduct as "abandonment" is unreasonable and inappropriate.

**Summary of Facts**:

A. Other subcontractors were present and working (in particular in Phase 1) during abatement;

B. MC has been "paid" for all floors by the GSA.

C. Hudspeth did perform additional demolition during abatement phase;

D. Additional abatement did cause significant additional costs and labor related to containments.

E. Revisions to the contract were agreed upon by the parties;

**2)** The following additional witnesses may testify based on their industry experience as to facts and circumstances in this case, specifically the documents reflecting their authorship and/or created by others under their supervision.   These disclosures are additionally made under Fed. R. Civ. P. 26(a)(1)(A)(i):

a. **Kylee Samuels**
Sr. Project Control Specialist
Scheduling Consultants, Ltd.
4025 Automation Way, F-3
Fort Collins, Colorado 805825
(970) 224-2503

**Subjects of Testimony**:   Construction Planning and Scheduling
Scheduling Specifications
Data Compilation and Schedule Reporting

Ms. Samuels may have information regarding the role of a construction scheduling company to government contracting and general contracting including tracking how projects are tracking against baselines, how changes in scheduling affect outcomes, and related financial information related to costs, cost recovery, and future trending; The role of the general contractor in providing data and information to the scheduling consultant.   That MC utilized the services of Scheduling Consultants, Ltd.; that MC provided data and information to Scheduling Consultants, Ltd.; that based on information provided by MC and obtained related to the New Customs House project, Scheduling Consultants produced reports produced in this litigation by MC.

   **b. Kevin M. Troyer**
       Sr. Project Manager
       Terracon Consulting
       3978 Ulster St.
       Denver, Colorado
       (303) 287-5351

       **Subjects of Testimony**:   Asbestos Abatement
                                     Asbestos Design
                                     Asbestos Survey
                                     Asbestos Techniques
                                     Oversight

Mr. Troyer may have information related to methods and progression employed on the New Customs House project, and that such methods were proper; Role of environmental consulting firm retained on jobs such as New Customs House; Methodology and purpose of asbestos survey; and, in general terms, the impact of additional quantities of ACM on schedule. Walsh Environmental performed an

asbestos survey and participated in significant part with MC in production of the bid materials; the survey states that the quantities are to be utilized in preparing the bid; methods employed to remove asbestos containing material at the project; proposed methods that were rejected that could have increased time and lowered expense on the project; the methods employed and transition to remove trace plaster as result of NEA (negative exposure assessment) in containment.

**3) Hudspeth reserves its right to call as an expert witness in this matter any expert witness listed or designated by any other party in this case even if such witness is later withdrawn.**

Hudspeth and Fidelity reserve their rights to amend these disclosures and have experts review additional documents and depositions as they are made available during discovery or disclosure in this case which may generate additional expert opinion testimony.

By making the above set forth disclosures, Hudspeth and Fidelity in no way admit or take a positon as to whether the opinions expressed above are, in fact, expert opinions subject to Rules 702, 703 or 704.  These disclosures are made without prejudice to seek admission at trial of additional testimony and evidence from the above listed witnesses or other witnesses consistent with the Rules.

DATED this 13th day of February, 2015.

Respectfully Submitted,

Reed F. Morris

James C. Mallon
Craig T. Watrous
Mallon Lonnquist Morris & Watrous, PLLC
3200 Cherry Creek South Drive
Denver, Colorado  80209
Tel: 303-927-0011

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2015, I served the foregoing **RULE 26(a)(2)(C) EXPERT WITNESS DISCLOSURES** to the following Parties' email addresses:

Edward T. DeLisle, Esquire
E-mail: edelisle@cohenseglias.com

J. Douglas Scherling, Esq.
E-mail: JDScherling@gmail.com

Attorneys for Defendants:
Centerre Construction, Inc.
Matsuo Engineering, LLC
Matsuo Engineering Centerre Construction A Joint Venture
Matsuo-Centerre A Joint Venture, LLC,
Berkley Regional Insurance Company
Matsuo Engineering Centerre Construction A Joint Venture, LLC

_____
s/Reed F. Morris